UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| LM GENERAL INSURANCE COMPANY, AMERICAN STATES INSURANCE COMPANY, LIBERTY MUTUAL FIRE INSURANCE COMPANY, LM INSURANCE CORPORATION, AND WAUSAU UNDERWRITERS INSURANCE COMPANY,<br><br>    Plaintiffs,<br><br>    vs.<br><br>FOREMOST PHARMACY LLC, 135 JERICHO PHARMACY CORP, MEDLINE PLUS PHARMACY INC, WELLNESS WORX INCORPORATED, WAQAR ALI, MUHAMMED HASSAN, SADAF LIAQAT, AHAD SHERAZ, AND FERHAN ALI,<br><br>    Defendants. | C.A. No.: |

### PLAINTIFFS' COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, LM General Insurance Company, American States Insurance Company, Liberty Mutual Fire Insurance Company, LM Insurance Corporation, and Wausau Underwriters Insurance Company, (collectively, "Liberty Mutual" and/or "plaintiffs"), by their attorneys, King, Tilden, McEttrick & Brink, P.C., allege as follows:

I.    **INTRODUCTION**

1.    Defendants Waqar Ali ("Ali"), Muhammed Hassan ("Hassan"), Sadaf Liaqat ("Liaqat"), Ahad Sheraz ("Sheraz"), and Ferhan Ali ("Ferhan") devised and implemented a fraudulent scheme to unlawfully operate pharmacies Foremost Pharmacy LLC ("Foremost"), 135

1

Jericho Pharmacy Corp ("135 Jericho"), Medline Plus Pharmacy Inc, ("Medline"), and Wellness Worx Incorporated ("Wellness Worx")[1] in violation of New York Law.

2.    The Defendants[2] damaged Liberty Mutual by submitting fraudulent claims through Foremost, 135 Jericho, Medline and Wellness Worx ("the pharmacy defendants") seeking payment for pain-relief products, including Lidocaine 5% Ointment, Diclofenac Sodium 3% Gel, Cyclobenzaprine 7.5mg tablets, and Tizanidine 4mg tablets ("Pain Products").

3.    The Defendants submitted claims to Liberty Mutual under New York's No-Fault laws, which provide insurance coverage to persons ("claimants") involved in automobile accidents.

4.    New York was an ideal venue for this scheme because claimants are eligible for at least $50,000.00 in coverage for necessary medical and pharmacy expenses, and because claimants can assign their No-Fault benefits to pharmacies.

5.    Pharmacies can seek payment directly from the claimant's insurer, which removes claimants from the billing process and keeps them ignorant about the cost of their care.

6.    Pharmacies are not eligible to collect No-Fault payments if they fail to comply with applicable New York state licensing laws.

7.    Pharmacies are prohibited from billing for unnecessary drugs under New York's No-Fault laws.

8.    Here, the Defendants billed Liberty Mutual for Pain Products that were medically unnecessary—the claimants did not need the Pain Products, and the drugs were ineffective to treat musculoskeletal conditions.

---

[1] The term "Pharmacy Defendants" means Foremost, 135 Jericho, Medline and Wellness Worx.
[2] The term "Defendants" means Foremost, 135 Jericho, Medline, Wellness Worx, Ali, Hassan, Liaqat, Sheraz, and Ferhan collectively.

9. The Pain Products were ordered for claimants as part of a fraudulent pre-determined treatment protocol that required prescriptions for all claimants regardless of medical need.

10. The Defendants knew that the Pain Products billed to Liberty Mutual by the Pharmacy Defendants were medically unnecessary and ineffective.

11. Pharmacies must also comply with a specific schedule of fees when submitting No-Fault claims because pharmacy claims are paid using rates that are calculated based on the drug's average wholesale price—a rate that is often many times greater than a drug's actual acquisition cost.

12. The defendants secured a steady stream of prescriptions, from two main referral sources: Atlantic Medical & Diagnostics, P.C. ("Atlantic Medical") and Vista Medical, P.C. ("Vista Medical").

13. Vista Medical is a new entity, having only filed with the State of New York Division of Corporations in July of 2024.

14. The Defendants enriched themselves at the expense of patients. The scheme generated vast numbers of prescriptions for the Defendants, but the ordering and dispensing of unnecessary drugs placed claimants at risk. Pain Products were prescribed and dispensed indiscriminately, without regard for actual medical need.

15. Overall, the Defendants operated in violation of New York law by dispensing and billing for drugs and medications that were prescribed pursuant to unlawful referral arrangements, were medically unnecessary, and were excessively charged.

16. The Defendants knew that they were ineligible to collect No-Fault payments, yet they still created statutory prescribed claim forms (i.e., NF-3 forms and CMS-1500 forms), which

falsely certified the pharmacy defendants' eligibility to collect No-Fault payments under New York law.

17.     Liberty Mutual reasonably relied on the facial validity of the records and bills mailed by the Defendants—and the representations contained therein—when making payments on the pharmacy defendants' No-Fault claims.

18.     The Defendants knew that the No-Fault claims were false and fraudulent because the bills and documents submitted to Liberty Mutual in support of the claims misrepresented or omitted material facts about the pharmacy defendants' eligibility to be paid under New York's No-Fault laws.

19.     The success of the Defendants scheme to defraud relied on the transmission to Liberty Mutual, through the U.S. Mail, of invoices, bills, and other No-Fault claim documents warranting the Defendants' eligibility to collect No-Fault payments under New York law.

20.     All of the acts and omissions of the Defendants described throughout this Complaint were undertaken intentionally.

21.     Liberty Mutual estimates that the Defendants purposely submitted to Liberty Mutual a multitude of bills on behalf of the Defendants knowing that none of the bills were lawfully compensable under prevailing New York law relative to No-Fault insurance coverage and reimbursement eligibility.

22.     By this Complaint, Liberty Mutual brings this action against the Defendants for: (a) violations of the federal Racketeer Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. § 1961, *et seq*.; (b) common-law fraud; and (c) unjust enrichment.

23.    This action seeks actual damages in excess of $364,113.84, which represent No-Fault payments that Liberty Mutual was wrongfully induced to make to the Defendants during the course of this scheme.

24.    Liberty Mutual also seeks a declaration pursuant to 28 U.S.C. § 2201 that it is not legally obligated to make any further payments to the Defendants (or their agents) in connection with any No-Fault claims submitted to Liberty Mutual.

## II.    PARTIES

### A.    PLAINTIFFS

25.    LM Insurance Corporation and LM General Insurance Company are companies duly organized and existing under the laws of the State of Illinois with their principal place of business in Boston, Massachusetts. LM Insurance Corporation and LM General Insurance Company are authorized to conduct business in the State of New York.

26.    Liberty Mutual Fire Insurance Company and Wausau Underwriters Insurance Company are companies duly organized and existing under the laws of the State of Wisconsin with their principal place of business in Boston, Massachusetts. Liberty Mutual Fire Insurance Company and Wausau Underwriters Insurance Company are authorized to conduct business in the State of New York.

27.    American States Insurance Company is a company duly organized and existing under the laws of the State of Indiana with its principal place of business in Boston, Massachusetts. American States Insurance Company is authorized to conduct business in the State of New York.

### B.    DEFENDANTS

#### 1.    Foremost Pharmacy LLC

28.    Foremost is a corporation organized under the laws of the State of New York.

29.     Foremost became a registered pharmacy in New York on May 17, 2024.

30.     Foremost is owned and controlled by Ali.

31.     Foremost's principal place of business is 7814 Merrick Road, Baldwin, NY 11510.

32.     Foremost's activities affect interstate commerce.

33.     The Defendants scheme required unlawful referrals for topical pain products from Atlantic Medical and Vista Medical in violation of New York law.

34.     Foremost billed for fraudulent pharmacy services in connection with Liberty Mutual claimants.

35.     Foremost dispensed medically unnecessary Pain Products without regard for patient care and in disregard of its duties under New York law.

36.     Foremost's bills are fraudulent because the pharmacy services were unnecessary and prescribed pursuant to a pre-determined treatment protocol designed to maximize the Defendants' profits at the expense of patient safety and well-being.

37.      Foremost participated in the affairs of the Atlantic Medical and Vista Medical enterprises by engaging in an unlawful referral relationship to obtain patients/ Liberty Mutual Claimants so Foremost could fraudulently bill Liberty Mutual for unnecessary topical pain products and medications.

38.     Accordingly, Foremost was never eligible to collect No-Fault payments from Liberty Mutual under N.Y. Ins. Law § 5102.

    **2.**   **<u>Waqar Ali</u>**

39.     Ali resides in New York.

40.     Ali owns Foremost.

41.     Ali and Foremost participated in a fraudulent billing scheme for medications prescribed as part of a pre-determined treatment protocol resulting in unlawful referral and kickback arrangements.

42.     Ali participated in the operation of Atlantic Medical and Vista Medical enterprises by dispensing topical pain products and medications pursuant to an unlawful referral arrangement during the relevant period and is therefore responsible for the fraudulent pharmacy services billed in connection with Liberty Mutual claimants at issue is this Complaint.

### 3.     135 Jericho Pharmacy Corp

43.     135 Jericho is a corporation organized under the laws of the state of New York.

44.     135 Jericho became a registered pharmacy in New York on June 28, 2021.

45.     135 Jericho is owned and controlled by Muhammad Hassan and Sadaf Liaqat.

46.     135 Jericho's principal place of business is 135 West Jericho Turnpike, Store #3, Huntington Station, NY 11746.

47.     135 Jericho's activities affect interstate commerce.

48.     The Defendant's scheme required unlawful referrals for topical pain products from Atlantic Medical in violation of New York law.

49.     135 Jericho billed for fraudulent pharmacy services in connection with Liberty Mutual claimants.

50.     135 Jericho dispensed medically unnecessary Pain Products without regard for patient care and in disregard of its duties under New York law.

51.     135 Jericho's bills are fraudulent because the pharmacy services were unnecessary and prescribed pursuant to a pre-determined treatment protocol designed to maximize the Defendants' profits at the expense of patient safety and well-being.

52.     135 Jericho participated in the affairs of the Atlantic Medical enterprise by engaging in an unlawful referral relationship to obtain patients/Liberty Mutual Claimants so 135 Jericho could fraudulently bill Liberty Mutual for unnecessary topical pain products and medications.

53.     Accordingly, 135 Jericho was never eligible to collect No-Fault payments from Liberty Mutual under N.Y. Ins. Law § 5102.

### 4.     Muhammad Hassan

54.     Hassan is a resident of New York.

55.     Hassan owns 135 Jericho with Liaqat.

56.     Hassan was the original sole owner of 135 Jericho.

57.     Hassan, Liaqat and 135 Jericho participated in a fraudulent billing scheme for medications prescribed as part of a pre-determined treatment protocol resulting in unlawful referral and kickback arrangements.

58.     Hassan participated in the operation of the Atlantic Medical enterprise by dispensing topical pain products and medications pursuant to an unlawful referral arrangement during the relevant period and is therefore responsible for the fraudulent pharmacy services billed in connection with Liberty Mutual claimants at issue is this Complaint.

### 5.     Sadaf Liaqat

59.     Liaqat is a resident of New York.

60.     Liaqat owns 135 Jericho with Hassan.

61.     Liaqat, Hassan and 135 Jericho participated in a fraudulent billing scheme for medications prescribed as part of a pre-determined treatment protocol resulting in unlawful referral and kickback arrangements.

62.     Liaqat participated in the operation of Atlantic Medical enterprise by dispensing topical pain products and medications pursuant to an unlawful referral arrangement during the relevant period and is therefore responsible for the fraudulent pharmacy services billed in connection with Liberty Mutual claimants at issue is this Complaint.

### 6.     **Medline Plus Pharmacy Inc**

63.     Medline is a corporation organized under the laws of the state of New York.

64.     Medline became a registered pharmacy in New York on August 12, 2021.

65.     Medline is owned and controlled by Sheraz.

66.     Medline's principal place of business is 444 West Jericho Turnpike, Huntington Station, NY 11743.

67.     Medline's activities affect interstate commerce.

68.     The Defendant's scheme required unlawful referrals for topical pain products from Atlantic Medical and Vista Medical in violation of New York law.

69.     Medline billed for fraudulent pharmacy services in connection with Liberty Mutual claimants.

70.     Medline dispensed medically unnecessary Pain Products without regard for patient care and in disregard of its duties under New York law.

71.     Medline's bills are fraudulent because the pharmacy services were unnecessary and prescribed pursuant to a pre-determined treatment protocol designed to maximize the Defendants' profits at the expense of patient safety and well-being.

72.     Medline participated in the affairs of the Atlantic Medical and Vista Medical enterprises by engaging in an unlawful referral relationship to obtain patients/Liberty Mutual

Claimants so Medline could fraudulently bill Liberty Mutual for unnecessary topical pain products and medications.

73.     Accordingly, Medline was never eligible to collect No-Fault payments from Liberty Mutual under N.Y. Ins. Law § 5102.

### 7.     **Ahad Sheraz**

74.     Sheraz is a resident of New York.

75.     Sheraz owns Medline.

76.     Sheraz and Medline participated in a fraudulent billing scheme for medications prescribed as part of a pre-determined treatment protocol resulting in unlawful referral and kickback arrangements.

77.     Sheraz participated in the operation of Atlantic Medical and Vista Medical enterprises by dispensing topical pain products and medications pursuant to an unlawful referral arrangement during the relevant period and is therefore responsible for the fraudulent pharmacy services billed in connection with Liberty Mutual claimants at issue is this Complaint.

### 8.     **Wellness Worx Incorporated**

78.     Wellness Worx is a corporation organized under the laws of the state of New York.

79.     Wellness Worx became a registered pharmacy in New York on July 31, 2024.

80.     Wellness Worx is owned and controlled by Ferhan.

81.     Wellness Worx's principal place of business is 2087 Wantagh Avenue, Wantagh, NY 11793.

82.     Wellness Worx's activities affect interstate commerce.

83.     The Defendant's scheme required unlawful referrals for topical pain products from Atlantic Medical in violation of New York law.

84.    Wellness Worx billed for fraudulent pharmacy services in connection with Liberty Mutual claimants.

85.    Wellness Worx dispensed medically unnecessary Pain Products without regard for patient care and in disregard of its duties under New York law.

86.    Wellness Worx's bills are fraudulent because the pharmacy services were unnecessary and prescribed pursuant to a pre-determined treatment protocol designed to maximize the Defendants' profits at the expense of patient safety and well-being.

87.    Wellness Worx participated in the affairs of the Atlantic Medical enterprise by engaging in an unlawful referral relationship to obtain patients/Liberty Mutual Claimants so Wellness Worx could fraudulently bill Liberty Mutual for unnecessary topical pain products and medications.

88.    Accordingly, Wellness Worx was never eligible to collect No-Fault payments from Liberty Mutual under N.Y. Ins. Law § 5102.

### 9.    Ferhan Ali

89.    Ferhan is a resident of New York.

90.    Ferhan is the owner of Wellness Worx.

91.    Ferhan and Wellness Worx participated in a fraudulent billing scheme for medications prescribed as part of a pre-determined treatment protocol resulting in unlawful referral and kickback arrangements.

92.    Ferhan participated in the operation of the Atlantic Medical enterprise by dispensing topical pain products and medications pursuant to an unlawful referral arrangement during the relevant period and is therefore responsible for the fraudulent pharmacy services billed in connection with Liberty Mutual claimants at issue is this Complaint.

III.    **JURISDICTION AND VENUE**

93.    Subject matter jurisdiction over this action is conferred upon this Court by 28 U.S.C. § 1331 and § 1332.

94.    Supplemental jurisdiction over the Plaintiffs' state law claims is proper under 28 U.S.C. § 1367.

95.    Venue is proper under 28 U.S.C. § 1391(b)(2) whereas the vast majority of the acts known to Liberty Mutual alleged herein were carried out within the Eastern District of New York.

96.    At all relevant times, the Defendants have engaged in purposeful activities in New York by seeking and submitting payment demands for claims made under New York's No-Fault laws, as detailed, *infra*.

97.    The Defendants used New York arbitrations and state court litigation to monetize their fraud against Liberty Mutual in such a way to essentially finance their fraudulent practices with proceeds paid by Liberty Mutual.

98.    The Defendants pattern of submitting and adjudicating baseless and repetitive claims have themselves helped to perpetuate their RICO violations.

99.    Specifically, the Defendants routinely commence frivolous New York arbitrations and/or state court litigation after Liberty Mutual denies their claims to fraudulently obtain No-Fault benefits that are used to finance the RICO scheme.

100.    The Defendants' activities in and contacts with New York were purposely sought and transacted to take advantage of the benefits available under New York's No-Fault laws.

101.    As the allegations and causes of action in the within Complaint arise from (a) the Defendants' unlawful acts committed in the State of New York, and (b) the fraudulent billing that Defendants generated and submitted from within the State of New York seeking payment under

New York's No-Fault laws, there is no question that there exists a substantial relationship between the transactions at issue and Liberty Mutual's causes of action.

## IV.    NO-FAULT LAWS AND RELEVANT LICENSING STATUTES

### A.    GENERAL OVERVIEW OF NEW YORK'S NO-FAULT LAWS

102.    Liberty Mutual underwrites automobile insurance in the State of New York.

103.    New York's No-Fault laws are designed to ensure that injured victims of automobile accidents have an efficient mechanism to pay reasonable fees for necessary healthcare services, including prescription drugs.

104.    Under New York's Comprehensive Motor Vehicle Insurance Reparations Act (N.Y. Ins. Law § 5101, *et seq*.), and the regulations promulgated pursuant thereto (11 N.Y.C.R.R. § 65, *et seq*.) (collectively, "the No-Fault laws"), automobile insurers are required to provide Personal Injury Protection Benefits (hereinafter, "No-Fault benefits") to Liberty Mutual claimants.

105.    Under New York's No-Fault laws, individuals are entitled to be compensated for "basic economic loss" resulting from injuries caused by the operation of an automobile.

106.    "Basic economic loss" is defined to include "all necessary expenses" for prescription drug services.  N.Y. Ins. Law § 5102(a)(1); 11 N.Y.C.R.R. § 65-1.1.

107.    No-Fault benefits include at least $50,000.00 per Liberty Mutual claimant for necessary expenses that are incurred for healthcare goods and services, including prescription drugs.

### B. ELIGIBILITY REQUIREMENTS UNDER NEW YORK'S NO-FAULT LAWS

108.    Pharmacies are not eligible to collect payment under New York's No-Fault laws if they fail "to meet **any** applicable New York State or local licensing requirement necessary to perform such services in New York."  *See* 11 N.Y.C.R.R. § 65-3.16(a)(12) (emphasis added).

109.    New York's Education Law applies to pharmacies.  *See* N.Y. Educ. Law § 6800, *et seq.*

110.    Under New York Education Law § 6808, no person, firm, corporation or association shall possess drugs, prescriptions or poisons for the purpose of compounding, dispensing, retailing, wholesaling or manufacturing, or shall offer drugs, prescriptions or poisons for sale at retail or wholesale unless registered by the New York State Department of Education as a pharmacy, wholesaler, manufacturer or outsourcing facility.

### 1. Duties of Pharmacies and Their Owners

111.    Pharmacy owners and supervising pharmacists "shall be responsible for the proper conduct of [the] pharmacy."  N.Y. Educ. Law § 6808(2)(e).

112.    "No pharmacist shall have personal supervision of more than one pharmacy at the same time."  *Id.*

113.    Only a licensed pharmacist or pharmacy intern may perform professional pharmacy services.  *See* 8 N.Y.C.R.R. § 63.6; 8 N.Y.C.R.R. § 29.7(21).

114.    Pursuant to 8 N.Y.C.R.R. § 63.6(b)(7), "[p]harmacists or pharmacy interns shall conduct a prospective drug review before each prescription is dispensed or delivered to the patient," which "review shall include screening for potential drug therapy problems due to therapeutic duplication, drug-drug interactions, including serious interactions with over-the-

counter drugs, incorrect drug dosage or duration of drug treatment, drug-allergy interactions, and clinical abuse or misuse."

115.    With regard to both off-premises and on-premises deliveries of drugs and medications, nothing in either delivery scenario "shall prevent a pharmacist or pharmacy intern from refusing to dispense a prescription if, in his or her professional judgment, potential adverse effects, interactions or other therapeutic complications could endanger the health of the patient." 8 N.Y.C.R.R. § 63.6(b)(8)(i)(e), § 63.6(b)(8)(ii)(d)(5).

116.    For a drug or medication that is delivered on the pharmacy's premises, before dispensing a medication to a new patient or a new medication to an existing patient, the pharmacist or pharmacy intern must personally counsel the patient by telephone or in person on appropriate matters, including known indications, common adverse side effects or interactions, and therapeutic contraindications.  8 N.Y.C.R.R. § 63.6(b)(8)(i)(a)-(b).

117.    When dispensing a drug or medication to a patient off of pharmacy premises, the pharmacist or pharmacy intern must "include with each prescription a written offer to counsel the patient" regarding the drug or medication, including its "known indications" and "common severe side or adverse effects or interactions and therapeutic contraindications that may be encountered." 8 N.Y.C.R.R. § 63.6(b)(8)(i)(a)(1), (4), § 63.6(b)(8)(ii)(a).

118.    The written offer of counseling for drugs dispensed off of pharmacy premises "shall provide a telephone number at which a licensed pharmacist or pharmacy intern may be readily reached."  8 N.Y.C.R.R. § 63.6(b)(8)(ii)(a).

119.    When dispensing a drug or medication to a patient off of pharmacy premises, if a pharmacist or pharmacy intern determines that the prescription(s) present "potential drug therapy problems which could endanger the health of the patient," such as "therapeutic duplications, drug-

drug interactions and drug-allergy interactions," the pharmacist or pharmacy intern "shall personally contact the patient" either by phone or in person to "offer counseling on the identified potential drug therapy problems" and other issues that the pharmacist or pharmacy intern deems appropriate in their judgment.  8 N.Y.C.R.R. § 63.6(b)(8)(ii)(d), (1).

120.    The responsibility of offering counseling to patients in these situations "shall not be delegated to an individual not authorized to practice pharmacy under a license or limited permit."  8 N.Y.C.R.R. § 68.6(b)(8)(ii)(d)(2).

121.    If the patient refuses to accept counseling, such refusal must be documented.  8 N.Y.C.R.R. § 63.6(b)(8)(ii)(d)(4).

122.    An individual who is not a licensed pharmacist is not authorized to perform functions requiring professional judgment, and thus cannot "interpret and evaluate a prescription for conformance with legal requirements, authenticity, accuracy and interaction of the prescribed drug with other known prescribed and over-the-counter drugs," cannot "sign or initial any record of dispensing required to be maintained by law," and cannot "counsel patients."  8 N.Y.C.R.R. § 29.7(a)(21)(ii)(b)(2), (5), (6), (7).

123.    Aiding and abetting an unlicensed person to practice a profession, including pharmacy, is considered a crime.  N.Y. Educ. Law § 6512.

### 2.    Unlawful Prescription Referral Arrangements

124.    New York law prohibits registered pharmacies from exploiting patients for financial gain.  8 N.Y.C.R.R. § 29.1(b)(2) (prohibiting registered pharmacies from "exercising undue influence on the patient or client, including the promotion of the sale of services, goods, appliances or drugs in such manner as to exploit the patient or client for the financial gain of the practitioner or of a third party").

16

125.    New York law prohibits registered pharmacies from engaging in unlawful referral relationships. *Id.* at § 29.1(b)(3) (prohibiting registered pharmacies from "directly or indirectly offering, giving, soliciting, or receiving or agreeing to receive, any fee or other consideration to or from a third party for the referral of a patient or client or in connection with the performance of professional services.").

126.    New York Education Law § 6509-a prohibits a professional licensee, including a licensed pharmacist, from "directly or indirectly" requesting, receiving, or participating in the division, transference, assignment, rebate, splitting or refunding of a fee in connection with professional care or services related to drugs and/or medications.

127.    Likewise, under New York Public Health Law § 238-a, a practitioner may not make a referral to a pharmacy where such practitioner has a financial relationship with the pharmacy. A financial relationship includes a compensation agreement and includes an arrangement with a healthcare provider that is in excess of fair market value or that provides compensation that varies directly or indirectly based on the volume or value of any referrals or business between the parties. N.Y. Pub. Health Law § 238-a(1), (5); *see also* N.Y. Educ. Law § 6530(18) (defining professional misconduct of physicians and physician assistants to include "[d]irectly or indirectly offering, giving, soliciting, or receiving or agreeing to receive, any fee or other consideration to or from a third party for the referral of a patient or in connection with the performance of professional services"); N.Y. Educ. Law § 6530(38) (defining professional misconduct of physicians and physician assistants to include "[e]ntering into an arrangement or agreement with a pharmacy for the compounding and/or dispensing of coded or specially marked prescriptions").

128.    It is a crime for "[a]ny person to enter into an agreement with a physician…for the compounding or dispensing of secret formula (coded) prescriptions." N.Y. Educ. Law § 6811.

### 3.   Electronic Prescription Mandate

129.   New York law requires electronic prescriptions for both controlled and non-controlled substances.  N.Y. Educ. Law § 6810(10); N.Y. Pub. Health Law § 281(3).

130.   The electronic prescription mandate was intended to reduce prescription drug fraud and misuse.  *See* N.Y. Senate Bill S7637 (2011-2012 Leg. Session) (explaining how "E-prescribing is a secure method of transmitting prescriptions from practitioners to pharmacists. Since an e-prescription cannot be physically altered, forged, or stolen …, it curtails prescription fraud.").

131.   There are few exceptions to the electronic prescription mandate, such as when electronic prescribing is not available due to temporary technological or electrical failure, where the prescribing provider has obtained a waiver, or where drugs cannot be prescribed electronically in a timely manner (and such delay would adversely impact the patient's medical condition).  N.Y. Educ. Law § 6810(10); N.Y. Pub. Health Law § 281(3).

132.   If a prescription is not issued electronically, then the prescribing provider must indicate in the patient's health record the reason that the prescription was not issued electronically. N.Y. Educ. Law § 6810(11)-(12).

133.   If the prescriber has obtained a waiver from the New York Department of Health because of "exceptional circumstances," then the prescriptions must be issued using an Official New York State Prescription Form or an oral prescription in accordance with New York law. N.Y. Educ. Law § 6810(10)(c); N.Y. Pub. Health Law § 281(3).

134.   Absent one of these limited exceptions, prescribing providers must prescribe all drugs and medications electronically.

### C.   CLAIMING REIMBURSEMENT UNDER NEW YORK'S NO-FAULT LAWS

135.   Claimants can assign their No-Fault benefits directly to pharmacies.

136.    Under a duly executed assignment, a claimant's pharmacy may submit claims directly to an insurance company and receive payment for necessary pharmacy services rendered. 11 N.Y.C.R.R. § 65.3-11(a).

137.    Pharmacies can submit claims using the claim form required by the New York State Department of Financial Services f/k/a New York State Department of Insurance ("DOI") (known as "Verification of Treatment by Attending Physician or Other Provider of Health Service" or more commonly as an "NF-3 form").  11 N.Y.C.R.R. § 65.3-11(b).

138.    Alternatively, pharmacies may submit claims to insurance carriers using the Health Insurance Claim Form (known as the "CMS-1500" form and formerly known as the "HCFA-1500" form).

139.    NF-3 and CMS-1500 forms are important because they certify that the pharmacy's request for payment is not materially false, misleading, or fraudulent, subject to the following warning:

> "Any person who knowingly and with intent to defraud any insurance company or other persons files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime[.]"

N.Y. Ins. Law § 403(d).

140.    Pharmacies make material misrepresentations when they submit NF-3 or CMS-1500 forms that omit or misrepresent material information about the billed-for services or the pharmacies' eligibility to collect No-Fault payments.

141.    It is a material misrepresentation to submit NF-3 or CMS-1500 forms for prescription drugs that (a) are never provided, (b) are not necessary, (c) are referred to the pharmacy pursuant to unlawful arrangements with prescribing providers, (d) are dispensed without

required supervision or regard for patient safety and well-being, and/or (e) are billed at a greater monetary charge than is permitted under the applicable fee schedule.

### D. REIMBURSEMENT FOR PRESCRIPTION DRUGS UNDER NEW YORK'S NO-FAULT LAWS

142. A pharmacy's misrepresentations regarding compliance with the applicable fee schedule is material because the New York Workers' Compensation Board has established a schedule of fees known commonly as the "Workers' Compensation Fee Schedule" ("Fee Schedule").

143. The Fee Schedule is used by healthcare providers and insurers to determine the level of reimbursement payable on legitimate claims.

144. The Fee Schedule applicable to pharmacies and prescription drugs is set forth under 12 N.Y.C.R.R. § 440.1, *et seq*.

145. The NDC is a unique 10-digit or 11-digit, 3-segment numeric identifier assigned to each drug that reflects the vendor of the drug, identifies the drug itself, and indicates the quantity in which the drug is packaged. Each NDC number has a corresponding AWP, which identifies the price.

146. AWP means the average wholesale price of a prescription drug as provided in the most current release of the Red Book published by Thomson Reuters or Medi-Span Master Drug Database by Wolters Kluwer Health, or any successor publisher, on the day a drug is dispensed. 12 N.Y.C.R.R. § 440.2(a).

147. For charges submitted by pharmacies for brand name and generic prescription drugs or medicines on or after October 1, 2019, 12 N.Y.C.R.R. § 440.5(a)(1)(ii) states that a provider may charge no more than, as applicable here, the lesser of the calculated cost or the usual and customary price for the prescription drug or medication.

148.    "Calculated cost means the average wholesale price for the national drug code of the prescription drug or medicine on the day it was dispensed plus a dispensing fee. For brand name drugs the Calculated cost shall be AWP minus twelve percent of the Average Wholesale price plus a dispensing fee of four dollars. For generic drugs the Calculated cost shall be AWP minus twenty percent plus a dispensing fee of five dollars."  12 N.Y.C.R.R. § 440.2(c).

149.    "Usual and customary price means the retail price charged to the general public for a prescription drug."  12 N.Y.C.R.R. § 440.2(s).

150.    Under New York's No-Fault Laws, healthcare providers, including pharmacies, are prohibited from submitting charges that exceed the amounts set forth in the Fee Schedule.

151.    Additionally, New York's No-Fault Laws expressly provide that "[a] provider of health care services is not eligible for reimbursement under section 5102(a)(1) of the Insurance Law if the provider fails to meet **any** applicable New York State or local licensing requirement necessary to perform such service in New York."  *See* 11 N.Y.C.R.R. § 65-3.16(a)(12) (emphasis added).

152.    Accordingly, if a professional healthcare service provider, including a pharmacy, fails to meet any applicable licensing requirement necessary to perform a service, then the provider is not lawfully entitled to seek or collect No-Fault benefits under New York's No-Fault laws.

153.    As alleged herein, the Defendants failed to meet several laws and regulations when providing pharmacy services to claimants during the course of this scheme; therefore, the Pharmacy Defendants were never eligible to collect No-Fault payments from Liberty Mutual.

## V.    SPECIFIC FACTS ABOUT THE DEFENDANTS' SCHEME TO DEFRAUD

### A.    NEXUS AMONG THE DEFENDANTS

154.    Foremost, 135 Jericho, Medline and Wellness all claim to be independently owned and operated by independent individuals.

155.    In reality, all three pharmacies appear to share control of and with each other.

#### 1.    Financial and Staff Overlap with Registration Board

156.    Specifically, in the Initial Application for Registration to the Board of Pharmacy Foremost identifies Ali as the sole owner, shareholder and contact person.  A true and accurate depiction of Ali's correspondence with the licensing board is below.

"Attestation Letter
To Whom It May Concern, I, Waqar Ali, President of Foremost Pharmacy, hereby attest that security film has been installed on the exterior and interior windows glass of our pharmacy premises.
This installation was done to enhance the security and safety of our property and assets.
I am attaching a copy of the receipt for the purchase of the security film, which confirms the installation of the film on our premises.
NAME : WAQAR ALI

Signature:

Title: President, Foremost Pharmacy

Date: 05/08/2024

157.    However in that same application, the certification for the requisite shatter proof tempered glass includes the receipt which is paid for by Sheraz, with a billing address of Medline. A true and accurate depiction of the receipt is below.

158.    135 Jericho asserts on its application that it is owned by Sadaf Liaqat.  A true and accurate depiction of page three of 135 Jericho application is below.



159.    135 Jericho asserts through its initial application in 2021 that it is owned by Muhammed Hassan.  A true and accurate depiction of the ownership information supplied on the 2021 application is depicted below.

160.    The renewal application to the New York State Education Department for 135 Jericho shows the renewal fee was paid by Medline. A true and accurate depiction of the check attached to page one of the renewal application is below.



161.    135 Jericho and Wellness Worx illegally shared a supervising pharmacist in May of 2024.

162.    Below is a true and accurate depiction of the attestation of supervising pharmacy for 135 Jericho.



163.    There is no documentation that Mr. Greenfield resigned from 135 Jericho.

164.    In fact, Mr. Greenfield is still, as of April 2025, listed as the supervising pharmacist for 135 Jericho.   Below is a true and accurate depiction of the New York State Education Department website showing Mr. Greenfield as the supervising pharmacist.

| | |
|---|---|
| **Legal Name** | 135 JERICHO PHARMACY CORP |
| **Trade Name** | --- |
| **Street Address** | 135 WEST JERICHO TURNPIKE STORE #3 HUNTINGTON STATION NY 11746 |
| **Registration No** | 038860 |
| **Date First Registered** | June 28, 2021 |
| **Registration Begins** | June 01, 2024 |
| **Registered Through** | May 31, 2027 |
| **Supervisor** | 029509 – GREENFIELD PAUL R |
| **Establishment Status** | Active |
| **Successor** | NONE |

NYS ED

April 30, 2025 10:17 AM (ET)
https://eservices.nysed.gov/professions/verification-search?

165.    Within the same May 2024 timeframe, Wellness Worx registered as a pharmacy. Below is a true and accurate depiction of the Wellness Worx paperwork with the attestation of the supervising pharmacist.

| 15 | ATTESTATION OF REGISTRANT |
| --- | --- |

The undersigned affirms under penalty of perjury that the answers and statements that he/she has made in the above application are true and have been made and given with the intent of having the New York State Education Department and the New York State Board of Pharmacy rely on the truth thereof.

Ferhan Ali        President (title)

Signature of registrant (Individual Owner, P...)        Date 05 / 28 / 2024
                                                             mo.   day    yr.

*Power of attorney must be submitted.

| 16 | ATTESTATION OF SUPERVISING PHARMACIST – PERSON NAMED IN ITEM 6 |
| --- | --- |

I hereby certify that I have full knowledge of my responsibilities and will discharge these responsibilities to the best of my ability and that I am not the supervising pharmacist of any other establishment registered by the Board of Pharmacy.

Paul R Greenfield

S.P.
Signature of s...

Date 05 / 30 / 2024
       mo.   day    yr.

166.   Based on the documentation submitted to the NYSED, the two pharmacies illegally shared a supervising pharmacist until August 20, 2024.  Below is a true and accurate depiction of the resignation form from Mr. Paul Greenfield for Wellness Worx.



Registered Name of Pharmacy: Wellness Worx Incorporated        DBA: Wellness Worx Pharmacy

Address of Pharmacy: 2087 Wantagh Ave Wantagh NY 11793

Pharmacy Registration Number: 041101        (See registration number on certificate. Do not provide store number of a chain drug store in lieu of registration number.)

Establishment E-mail: Welinessworxpharmacy@gmail.com

I, paul Greenfield, holding pharmacist

license number 029509 hereby provide notification to the State Board of Pharmacy that I have resigned from the position of supervising pharmacist of the pharmacy indicated above, on 08/20/2024

Date: 08 / 21 / 2024

167.    Additionally, in documents obtained from the New York State Education Department, Office of Professions, State Board of Pharmacy, Simone Serna a/k/a Simone Avila is identified as the person preparing the registration documents for Foremost, Medline, and Wellness Worx.

### 2.    **Common Biller**

168.    Foremost, 135 Jericho, Medline and Wellness Worx also share the same billing company, Tangent-EHR LLC.

169.    Below is a true and accurate depiction of the billing for Foremost Pharmacy:

```
FOREMOST PHARMACY LLC
c/o Tangent- EHR LLC
P.O. BOX 9045
HICKSVILLE NY 11802
```

170.    Below is a true and accurate depiction of the billing utilizing Tangent-EHR LLC from 135 Jericho:

```
135 JERICHO PHARMACY CORP.
c/o Tangent- EHR LLC
P.O. BOX 9045
HICKSVILLE NY 11802
```

171.    Below is a true and accurate depiction of the billing utilizing Tangent-EHR LLC from Medline:

28

MEDLINE PLUS PHARMACY INC.
c/o Tangent- EHR LLC
P.O. BOX 9045
HICKSVILLE NY 11802

172.    Below is a true and accurate depiction of the billing utilizing Tangent-EHR LLC from Wellness Worx:

WELLWISE PHARMACY CORP.
c/o Tangent- EHR LLC
P.O. BOX 9045
HICKSVILLE NY 11802

**3.    Common Referring Providers**

173.    The Pharmacy Defendants have overlapping referral providers.  The Pharmacy defendants all receive referrals from Atlantic Medical, primarily operating out of four addresses according to the billing submitted to Liberty Mutual:

- 107-48 Guy R. Brewer Blvd, Suite 205, Jamaica, New York;

- 5205 Church Street, Brooklyn, New York;

- 787 Meacham Ave, Elmont, New York; and

- 29-16 Linden Blvd, Cambria Heights, New York.

174.    Foremost and Medline also received prescriptions from Vista Medical, operating out of 787 Meacham Ave a shared location with Atlantic Medical.

4.      **Common Patients**

175.    Foremost Pharmacy and 135 Jericho share multiple patients, despite the two pharmacies being over 20 miles apart from each other.

176.    Claimant M.A. (Claim No. 056519774) received prescriptions on or about June 18, 2024 from 135 Jericho, a pharmacy that is over 30 miles from M.A.'s residence.

177.    M.A. then received a subsequent prescription that was delivered on August 1, 2024 from Foremost, 15.9 miles away from his residence.  M.A.'s signature also appears to change between pharmacies.

178.    Below is a true and accurate depiction of the delivery receipts from 135 Jericho and Foremost:

 

179.    Foremost and 135 Jericho also share Claimant K.H. (Claim No. 057200662).

180.    K.H. has a delivery receipt for a delivery in June, purportedly delivered to K.H.'s residence, 19.4 miles away from Foremost Pharmacy.  That delivery receipt is depicted below.



181.    In August of 2024, there are two delivery receipts from 135 Jericho to K.H. for prescriptions that were delivered a day apart.  Those delivery receipts are depicted below.





182.    According to the delivery receipt, the August 2024 prescriptions were delivered by to K.H at 5205 Church Avenue, Brooklyn NY, 35.8 miles away from the pharmacy.

183.    K.H. resides approximately 38 miles from 135 Jericho.

184.    Between the three delivery receipts there also appears to be three different signatures.

185.    G.R. (Claim No. 056945432) started receiving prescriptions from 135 Jericho in June of 2024. 135 Jericho submitted delivery receipts for June and July deliveries.

186.    Foremost submitted billing and a delivery receipt for August of 2024 for G.R.

187.    Below are true and accurate depictions of the delivery receipts for G.R.:







188.    In the side by side comparison of the four delivery receipts, it is clear that there are at least two different signatures on the delivery receipts.[3]

## B.    OVERVIEW OF THE DEFENDANTS' SCHEME

189.    At all relevant times, the Pharmacy Defendants failed to comply with New York law governing pharmacies and were not eligible to seek or receive payments under New York's No-Fault laws as a result of the Defendants' scheme to defraud.

190.    The overarching purpose of the Defendants' scheme was to obtain No-Fault payments that the Defendants were not entitled to receive for their personal benefit.

191.    The Defendants achieved this goal by submitting charges for a pre-determined treatment protocol of medically unnecessary and expensive drugs and medications, including Pain Products.

192.    The Defendants selected those drugs and medications comprising this pre-determined treatment protocol to include those that could be acquired at low cost and then billed at inflated rates to maximize the Defendants' profits.

193.    As explained below, there is significant evidence that the prescriptions for drugs and medications billed by the Defendants to Liberty Mutual under New York's No-Fault laws were funneled to the Defendants pursuant to an unlawful referral relationship with the providers.

194.    The Defendants devised and executed their scheme knowing that (a) the prescriptions were issued pursuant to pre-determined treatment protocols of medically unnecessary and ineffective drugs and medications, which elevated profits over genuine patient care, (b) the prescriptions were invalid under New York law, (c) the prescriptions were issued in exchange for

---

[3]All redactions have been made in compliance with State and Federal requirements, unredacted versions are available for the Court's review upon request.

unlawful kickbacks or other incentives, and (d) the No-Fault claim documents submitted to Liberty Mutual falsely represented the Defendants' eligibility to collect No-Fault payments.

### C. PREDETERMINED TREATMENT PROTOCOL

195.    The Defendants' scheme was designed such that prescribers were limited to a predetermined set of drugs and medications; in doing so, the Defendants ensured that these drugs and medications were prescribed in all cases, regardless of whether the patients even needed or wanted them.

196.    As a result, the Defendants billed Liberty Mutual for the same recurring set of unnecessary, unwarranted, and ineffective Pain Products, including: Lidocaine 5% Ointment, Diclofenac Sodium 3% Gel, Cyclobenzaprine 7.5 mg tablets, and Tizanidine 4mg tablets.

197.    The Defendants focused on billing for these expensive Pain Products even though substantially similar products were available as over-the-counter drugs at a fraction of the cost.

198.    The Defendants intentionally based their fraudulent scheme on steering providers to prescribe these specific Pain Products to be billed for by the Defendants, in place of other less expensive products, to maximize the amounts collected by the Defendants in violation of New York's No-Fault laws.

199.    The Defendants used the provider entities to prescribe Lidocaine 5% Ointment, Diclofenac Sodium 3% Gel, Cyclobenzaprine 7.5mg tablets, and Tizanidine 4mg tablets, without regard for efficacy or patient safety.

200.    The chart attached at Exhibit 1 lays bare the Defendants' disproportionate focus on billing for pain products including the following most commonly billed-for Pain Products:

| **Drug Name** | **NDC** |
|---|---|
| Lidocaine 5% Ointment | 68462-0418-27 |
| Lidocaine 5% Ointment | 16714-0878-01 |
| Diclofenac Sodium 3% Gel | 51672-1363-07 |
| Cyclobenzaprine 7.5 g | 69420-1001-01 |
| Tizanidine 4 mg | 55111-0180-10 |
| Tizanidine 4 mg | 16714-0172-01 |

201.    The Defendants targeted and selected these particular Pain Products because they could be acquired at a low cost and then billed to Liberty Mutual in terms of the drugs' AWP, which allowed the Defendants to realize a substantial profit for every prescription at Liberty Mutual's and the claimants' expense.

**D.    DEFENDANTS' UNLAWFUL REFERRAL RELATIONSHIP WITH ATLANTIC MEDICAL AND VISTA MEDICAL**

202.    The Defendants' scheme to defraud required a high volume of facially valid prescriptions to permit the Pharmacy Defendants to submit charges for prescription Pain Products.

203.    To maintain a steady flow of prescriptions for a particular set of expensive Pain Products, the Defendants colluded with the healthcare providers at Atlantic Medical and Vista Medical, who specialize in No-Fault and had large available patient bases for the Defendants to take advantage of to maximize the Pharmacy Defendants' billing.

204.    Atlantic Medical and Vista Medical, generated prescriptions for Pain Products in accordance with the Defendants' pre-determined prescription protocol regardless of whether the patients needed, or even wanted, the drugs and medications.

205.    Upon information and belief, the Defendants paid kickbacks or other incentives to Atlantic Medical and Vista Medical employees in exchange for these unlawful prescriptions in violation of New York law.

206.    Atlantic Medical and Vista Medical funneled these prescriptions to the Pharmacy Defendants without giving the patients any choice of where to fill the prescriptions.

207.    These unlawful referral relationships were crucial to the success of the Defendants' scheme to defraud and resulted in false and fraudulent charges for medically unnecessary and expensive drugs and medications, including Pain Products.

### 1.    **Atlantic Medical History of Fraudulent Activity**

208.    Atlantic Medical has a history of being accused of engaging in fraudulent activity under New York's No-Fault laws.

209.    Atlantic Medical is alleged to be part of a scheme where the P.C is used to funnel fraudulent billing to insurance companies for excessive and unnecessary treatment and unlawful referrals. *See Allstate Ins. Co. v. Jonathan S. Landow M.D et al*, No. 1:24-cv-02010-DLI-JRC (E.D.N.Y., 2024); *United States Automobile Association et al v. Landow M.D. et al,* 1:24-cv-03471-NRM-MMH (E.D.N.Y., 2024); *GEICO v. Landow, M.D., et al,* 1:21-cv-01440-NGG-RER; *Travelers Insurance et al v. Jonathan Landow et al* (NY County 656567/2021).

210.    Treatment of patients at Atlantic Medical also resulted in patients being prescribed medication, without even being consulted by the doctors treating them at Atlantic Medical. *Id*.

211.    Atlantic Medical was allegedly under the control of one or more non-physicians who dictated management and course of treatment. *Id*.

212.    There was an unlawful sharing of professional physician fees with non-physicians. *Id*.

213.    There was billing for services rendered based on unlawful referral and unnecessary healthcare services in violation of New York Law. *Id.*

### 2.    Depriving Claimants' Choice of Pharmacy

214.    Atlantic Medical and Vista Medical ensured that prescriptions were funneled directly to the Pharmacy Defendants to bill for the prescribed drugs and medications without giving the claimants a choice of pharmacy.

215.    Claimants received the medications billed to Liberty Mutual by the Pharmacy Defendants directly at the No-Fault clinic or through delivery to their homes.

216.    The Defendants chose to dispense these medications directly to patients because the Pharmacy Defendants' physical locations were not convenient to the majority of its claimants who resided outside of the neighborhoods where the Pharmacy Defendants were located.

217.    The chart below contains a representative sample illustrating the considerable distance between Foremost's physical location in Baldwin, NY and the residences of many of its claimants:

| Claimant | Claimant's Residence | Approximate Miles from Foremost |
|----------|----------------------|---------------------------------|
| C.V. (Claim No. 056775057) | Brooklyn, NY | 20.8 |
| G.R. (Claim No. 056945432) | Jamaica, NY | 16.8 |
| J.P (Claim No. 0572353508) | Brooklyn, NY | 20.1 |
| M.A. (Claim No. 056519774) | Ozone Park, NY | 15.9 |
| H.K (Claim No. 057200662-01) | Brooklyn, NY | 19.4 |

218.   The chart below contains a representative sample illustrating the considerable distance between 135 Jericho's physical location in Huntington Station, NY and the residence of many of its claimants:

| Claimant | Claimant's Residence | Approximate Miles from 135 Jericho |
|---|---|---|
| A.W. (Claim No. 056666091) | Brooklyn, NY | 37.8 |
| B.C (Claim No. 056519774) | Ozone Park, NY | 30.6 |
| F.H. (Claim No. 0562393301) | Jamaica, NY | 28.2 |
| G.R. (Claim No. 05945432) | Jamaica, NY | 31.4 |
| J.P. (Claim No 0572353508 | Brooklyn, NY | 34.9 |

219.   The chart below contains a representative sample illustrating the considerable distance between Medline's physical location at Huntington, NY and the residence of many of its claimants:

| Claimant | Claimant's Residence | Approximate Miles from Medline |
|---|---|---|
| J.O. (Claim No. 05666091) | Brooklyn, NY | 34.0 |
| T.F. (Claim No. 056119093) | Hempstead, NY | 15.4 |
| D.A. (Claim No. 056906821) | Brooklyn, NY | 35.8 |
| A.R. (Claim No. 058259289) | Springfield Gardens, NY | 27.0 |

220.   The chart below contains a representative sample illustrating the considerable distance between Wellness Worx at its physical location of Wantagh, NY and the residence of many of its claimants:

| Claimant | Claimant's Residence | Approximate Miles from Wellness Worx |
|---|---|---|
| M.B. (Claim No. 0582611270002) | Brooklyn, NY | 34.8 |
| D.O. (Claim No. 058609325) | Brooklyn, NY | 28.0 |
| A.A. (Claim No. 056664435) | Queens Village, NY | 16.6 |
| A.T. (Claim No. 058062542) | Queens Village, NY | 17.0 |
| A.J. (Claim No. 055803738) | Glen Oaks, NY | 18.7 |

221.    Atlantic Medical and Vista Medical, and the Defendants eliminated any option of pharmacy by choosing the Pharmacy Defendants for the patients and immediately filling and directly dispensing the drugs and medications to the claimants at the No-Fault clinics or their residences.

E.    UNNECESSARY PAIN PRODUCTS

222.    The Pharmacy Defendants billed Liberty Mutual for Pain Products, including Lidocaine 5% Ointment, Diclofenac Sodium 3% Gel, Cyclobenzaprine 7.5mg tablets,  and Tizanidine 4mg tablets, that were medically unnecessary, not indicated for the treatment of musculoskeletal injuries, and/or chosen for their potential reimbursement value over lower-priced alternatives available over the counter.

223.    Pain medications, including topical NSAIDs, lack proven effectiveness for the treatment of widespread musculoskeletal pain.

224.    Pain medications may be indicated where the patient failed a trial of oral medications, has specific allergies to certain oral medications, or is incapable of swallowing pills.

225.    However, despite no documentation of an intolerance to oral NSAIDs or muscle relaxants, the Pharmacy Defendants' claimants were prescribed both topical and oral NSAIDs to treat a diagnosis of musculoskeletal pain.

226.    The topical Pain Products billed to Liberty Mutual by the Pharmacy Defendants are not approved or intended to treat musculoskeletal injuries; rather, they are approved for the treatment of superficial pain, skin conditions, or nerve pain.

227.    Less toxic formulations of topical Lidocaine and Diclofenac are available over the counter at significantly lower cost.

228.    By prescribing and dispensing a predetermined treatment protocol of among the most expensive pain medications, the Defendants subjected the patients to unnecessarily high concentrations of Pain Products intended to treat conditions other than musculoskeletal pain for the purpose of exploiting these patients' available No-Fault benefits.

### 1.    Unnecessary Lidocaine 5% Ointment

229.    The Pharmacy Defendants billed Liberty Mutual for Lidocaine 5% Ointment.  *See* Exhibit 1.

230.    Lidocaine 5% Ointment is not a first-line treatment for musculoskeletal pain; rather, it is indicated for temporary pain relief for minor burns, skin abrasions, insect bites, and as a topical anesthetic.

231.    Indeed, the product labeling for Lidocaine 5% Ointment indicates that the drug is not effective when applied on intact skin, which is because Lidocaine 5% Ointment is incapable of sufficiently penetrating intact skin.  Even though topical Lidocaine is sometimes used to treat neuropathic pain in adults, high concentrations of the drug must be used because topical Lidocaine crosses the skin poorly.

232.    The patients that were prescribed Lidocaine 5% Ointment billed to Liberty Mutual by the Pharmacy Defendants did not have any documented minor skin conditions or true neuropathic pain warranting Lidocaine 5% Ointment.

233.    Moreover, Lidocaine 4% Cream under the brand name Aspercreme is available at neighborhood pharmacies at a small fraction of the amount charged by the Pharmacy Defendants for the Lidocaine 5% Ointment.

234.    A true and accurate representation of Aspercreme from an online pharmacy is depicted below.





235.    The Pharmacy Defendants' bills for Lidocaine 5% Ointment are fraudulent and Liberty Mutual is entitled to recover payments and disclaim coverage in all such claims including, but not limited to, the claims listed in Exhibit 1.

236.    The Pharmacy Defendants were not eligible for No-Fault reimbursement for the Lidocaine 5% Ointment billed to Liberty Mutual because this drug was not medically necessary or effective in treating the claimants' musculoskeletal conditions.

237.    All fraudulent Lidocaine 5% Ointment billed in connection with Liberty Mutual claimants traveled through the U.S Mail.

2.    **Unnecessary Diclofenac Sodium 3% Gel**

238.    The Defendants billed for massive quantities of Diclofenac Sodium 3% Gel which is not effective, approved, or indicated for the topical treatment of musculoskeletal injuries, such as those sustained in a motor vehicle accident.

239.    A true and accurate representation of the FDA approval of Diclofenac Sodium 3% Gel is depicted below:

SkyePharma Inc.
Attention: Gordon L. Schooley, Ph.D.
Senior Vice President, Clinical Research & Regulatory Affairs
10450 Science Center Drive
San Diego, CA 92121

Dear Dr. Schooley:

Please refer to your new drug application (NDA) dated October 20, 1998, received October 22, 1998, submitted under section 505(b) of the Federal Food, Drug, and Cosmetic Act for Solaraze (diclofenac sodium) Gel, 3%.

Please refer to our action letters dated October 21, 1999, and July 19, 2000.

We acknowledge receipt of your submissions dated July 28, August 15, September 22, and October 3, 2000. Your submission of August 15, 2000, received August 16, 2000, constituted a complete response to our July 19, 2000 action letter.

This new drug application provides for the use of Solaraze (diclofenac sodium) Gel for the topical treatment of actinic keratoses.

We have completed the review of this application, as amended, and have concluded that adequate information has been presented to demonstrate that the drug product is safe and effective for use as recommended in the agreed upon enclosed labeling text. Accordingly, the application is approved effective on the date of this letter.

240.    Diclofenac Sodium 3% Gel is approved for topical treatment of actinic keratoses.

241.    The use of Diclofenac Sodium 3% Gel in patients without osteoarthritis exposes the patients to increased and unnecessary risks for skin irritation, hypersensitivity, and photosensitivity.

242.    Diclofenac Gel also exists in a 1% concentration; it is an NSAID that may be effective in the treatment of pain in the peripheral joints, such as the hand or knee, but it has no proven efficacy for pain relief for larger and deeper joints, such as the spine or shoulder, to which the gel cannot penetrate.

243.    Simply because Diclofenac Sodium 3% Gel is more concentrated than Diclofenac Sodium 1% Gel does not mean that either are more effective for the treatment of joint pain, for which condition Diclofenac Sodium 3% Gel is not indicated.

244.    Diclofenac Sodium 3% Gel is substantially more toxic topically and systematically than Diclofenac Sodium 1% Gel.

245.    The Fee Schedule calls for reimbursement of Diclofenac Sodium 3% Gel at a much higher rate than generic Diclofenac Sodium 1% Gel.

246.    The generic Diclofenac Sodium 3% Gel billed to Liberty Mutual by the Pharmacy Defendants has an AWP of $111.56 per 100 gram package under NDC 51672-1363-07.

247.    Generic Diclofenac Sodium 1% Gel (NDC No. 69097-0524-44) has an AWP of less than $53.00 per 100-gram package.

248.    Therefore, the Defendants could charge no more than $85.00 for each prescription of 200 grams of generic Diclofenac Sodium 1% Gel.

249.    However, for each prescription of 200 grams of generic Diclofenac Sodium 3% Gel, the Defendants could charge over $178.00 under NDC 51672-1363-07.

250.    In fact, Foremost, 135 Jericho and Medline charged Liberty Mutual $1,887.20 per 200-gram package under NDC 51672-1363-07.

251.    Diclofenac Sodium 1% Gel is available over the counter; a 100-gram tube of Voltaren Topical 1% Gel may be purchased at retail without a prescription for less than $23.00.

252.    A true and accurate representation of Voltaren from an online pharmacy is depicted below.



253.    Accordingly, the Defendants were motivated by profit to ensure that the Referring Providers ordered Diclofenac Sodium 3% Gel for their patients instead of the less expensive Diclofenac Sodium 1% Gel even though the 3% preparation is neither approved nor effective at treating joint pain.

254.    The Pharmacy Defendants were not eligible for No-Fault reimbursement for the Diclofenac Sodium 3% Gel billed to Liberty Mutual because these drugs were not medically necessary or effective in treating the claimants' musculoskeletal conditions.

255.    The Defendants induced the Referring Providers to prescribe Diclofenac Sodium 3% Gel to permit the Defendants to submit inflated and/or excessive charges for this product.

256.    The Pharmacy Defendants' bills for Diclofenac Sodium 3% Gel that traveled through the U.S. Mail are fraudulent and Liberty Mutual is entitled to recover payments and disclaim coverage in all such claims including, but not limited to, the claims listed in Exhibit 1.

### 3.    Unnecessary Cyclobenzaprine

257.    Cyclobenzaprine is a muscle relaxant intended for short term use to treat muscle pain and reduced range of motion caused by muscle spasms.  Short term use is defined as 2-3 weeks.

258.    Prolonged use of Cyclobenzaprine often requires a weening off period, or the patient is at an increased risk of nausea, headache and malaise.

259.    The Defendants' predetermined treatment protocol has Liberty Mutual claimants prescribed Cyclobenzaprine for months after the date of accident, reducing the risk of efficacy and increasing the risk of harmful side effects demonstrating a clear example of profit over patient care.

260.    By prescribing and dispensing a predetermined treatment protocol of among the most expensive pain medications, the referring providers and the Defendants subjected the patients to unnecessarily high concentrations of Pain Products intended to treat conditions other than musculoskeletal pain for the purpose of exploiting these patients' available No-Fault benefits.

261.    The Pharmacy Defendants were not eligible for No-Fault reimbursement for the Cyclobenzaprine billed to Liberty Mutual because this drug was not medically necessary or effective in treating the claimants' musculoskeletal conditions.

262.    The Pharmacy Defendants' bills for Cyclobenzaprine are fraudulent and Liberty Mutual is entitled to recover payments and disclaim coverage in all such claims including, but not limited to, the claims listed in Exhibit 1.

263.    All fraudulent Cyclobenzaprine billed in connection with Liberty Mutual claimants traveled through U.S Mail.

### 4.    Unnecessary Tizanidine

264.     Foremost, 135 Jericho and Medline billed Liberty Mutual for Tizanidine 4mg tablets.

265.    Tizanidine is a short acting drug used to manage spasticity due to multiple sclerosis, spinal cord injury, stroke, amyotrophic lateral sclerosis and traumatic brain injury.

266.    None of the Liberty Mutual claimants who purportedly received Tizanidine from Foremost, 135 Jericho and Medline experienced any of these conditions.

267.    By prescribing and dispensing a predetermined treatment protocol of among the most expensive pain medications, the Foremost, 135 Jericho and Medline subjected the patients to unnecessarily high concentrations of Pain Products intended to treat conditions other than musculoskeletal pain for the purpose of exploiting these patients' available No-Fault benefits.

268.    By prescribing unnecessary pain medication, Foremost, 135 Jericho and Medline were able to generate a profit, even without inflating their billing.

269.    Tizanidine is a muscle relaxant designed to relieve muscle spasticity that comes in doses of 2 mg, 4 mg or 6 mg.

270. Tizanidine is a short acting drug used to manage spasticity due to multiple sclerosis, spinal cord injury, stroke, amyotrophic lateral sclerosis and traumatic brain injury.

271. The recommended initial dose is 2 mg and if necessary gradually increased. Foremost, 135 Jericho and Medline filled prescriptions almost exclusively for 4 mg to further defraud Liberty Mutual.

272. A true and accurate copy of a representative invoice from Foremost is depicted below.



273. A true and accurate copy of a representative invoice from 135 Jericho is depicted below.

| 15. REPORT OF SERVICES RENDERED -- ATTACH ADDITIONAL SHEETS IF NECESSARY | | | | |
|---|---|---|---|---|
| DATE OF SERVICE | PLACE OF SERVICE INCLUDING ZIP CODE | DESCRIPTION OF TREATMENT OR HEALTH SERVICE RENDERED | FEE SCHEDULE TREATMENT CODE | CHARGES |
| 06/08/2024 | 135 W. JERICHO TPKE HUNTINGTON NY 11746 | LIDOCAINE 5% OINT (250) | 33342040550    1 | 1522.00 |
| 06/08/2024 | 135 W. JERICHO TPKE HUNTINGTON NY 11746 | IBUPROFEN 800MG TAB (45) | 65162046601    1 | 28.87 |
| 06/08/2024 | 135 W. JERICHO TPKE HUNTINGTON NY 11746 | TIZANIDINE 4MG TAB 4MG (15mg) | 16714017201    1 | 17.58 |
| | | | TOTAL CHARGES TO DATE $ | 1568.45 |

274.    A true and accurate copy of a representative invoice from Medline is depicted below.

| 15. REPORT OF SERVICES RENDERED -- ATTACH ADDITIONAL SHEETS IF NECESSARY | | | | |
|---|---|---|---|---|
| DATE OF SERVICE | PLACE OF SERVICE INCLUDING ZIP CODE | DESCRIPTION OF TREATMENT OR HEALTH SERVICE RENDERED | FEE SCHEDULE TREATMENT CODE | CHARGES |
| 07/19/2024 | 444 W. JERICHO TURNPIKE HUNTINGTON NY 11743 | IBUPROFEN 800 MG TAB (30) | 65162046610    1 | 19.25 |
| 07/19/2024 | 444 W. JERICHO TURNPIKE HUNTINGTON NY 11743 | TIZANIDINE 4MG CAP (30mg) | 70710111208    1 | 82.49 |
| 07/19/2024 | 444 W. JERICHO TURNPIKE HUNTINGTON NY 11743 | LIDOCAINE 5% OINT (250gm) | 64380078932    1 | 1787.00 |
| 07/19/2024 | 444 W. JERICHO TURNPIKE HUNTINGTON NY 11743 | DICLOFENAC SODIUM GEL 3% (200gm) | 51672136307    1 | 1887.20 |
| | | | TOTAL CHARGES TO DATE $ | 3775.94 |

275.    Foremost, 135 Jericho, and Medline were not eligible for No-Fault reimbursement for the Tizanidine 4mg billed to Liberty Mutual because these drugs were not medically necessary or effective in treating the claimants' musculoskeletal conditions.

276.    The claims identified in Exhibit 1 contain extended and dangerous prescriptions for Tizanidine for months after the dates of accident.

277.    All fraudulent Tizanidine billed in connection with Liberty Mutual claimants traveled through U.S Mail.

### F.    FAILURE TO LAWFULLY OVERSEE DISPENSING OF DRUGS AND MEDICATIONS

278.    Nearly all of the Liberty Mutual claimants were prescribed Pain Products.

279.    Topical Lidocaine, Diclofenac Gel and NSAIDs in general, may cause side-effects, including damage to the intestines, the lining of the stomach, internal bleeding and other serious medical problems.

280.    Therefore, when an oral NSAID, such as Cyclobenzaprine, is taken in conjunction with a topical NSAID, like Lidocaine, there are certain health risks to the patient.

281.    Atlantic Medical and Vista Medical prescribed both oral and topical NSAIDs to the same patient without properly considering the potentially harmful effects.

282.    The Pharmacy Defendants dispensed to patients both the oral and topical NSAIDs without conducting a proper review to avoid therapeutic duplication presenting a risk to the health and safety of the claimants.

283.    An individual who is not a licensed pharmacist is not authorized to perform functions requiring professional judgment, including evaluating prescriptions for drug interactions and counseling patients. 8 N.Y.C.R.R. § 29.7(a)(21)(ii)(b)(1), (2), (6), (7).

284.    The Pharmacy Defendants' receipts do not identify who delivered the drug or medication to the patient.

285.    Upon information and belief, the Pharmacy Defendants' patients were not personally offered counseling on the issues raised by the prescriptions for both oral and topical

NSAIDs, including therapeutic duplication, by a pharmacist or pharmacy intern over the telephone or in person before the drugs and medications were delivered to the patients outside of the Pharmacy Defendants' premises.

286.    In the many instances where delivery receipts were submitted to Liberty Mutual, they were completed in an inaccurate manner. Specifically, the receipts neglect to document who delivered the prescriptions.

287.    Additionally, the receipts for claimants that have multiple rounds of prescriptions delivered contain inconsistencies in the receipts, which cannot be followed up on since there is no information regarding who delivered the prescription.

288.    A true and accurate sample of a representative delivery receipt is depicted below:



289.    The Defendants, and Atlantic Medical and Vista Medical disregarded patient safety when prescribing, dispensing and delivering duplicative and medically unnecessary topical

medications with oral NSAIDs in furtherance of their scheme to prescribe and bill for as many drugs and medications as possible.

290.    The Defendants violated their duty to their patients to identify risks posed by the therapeutic duplication of topical and oral NSAIDs and to provide an offer of appropriate counseling personally from a licensed pharmacist or pharmacy intern over the telephone or in person before the medications were delivered outside of the Defendants' premises.

### G.    EXCESSIVE CHARGES

#### 1.    Lidocaine 5% Ointment

291.    Medline also exploited the Average Wholesale Price ("AWP") and Wholesale Acquisition Cost ("WAC") for Lidocaine 5% Ointment, which Medline billed under NDC nos. 64380-0789-32 and 16714-0878-01.

292.    The comparison between Lidocaine 5% Ointment  and Lidocaine 4% Ointment, commonly known as Aspercreme, is shown below.

| Drug | NDC | AWP[4] |
|---|---|---|
| Lidocaine 5% Ointment | 64380-0789-32 | $8.93/gram |
| Lidocaine 5% Ointment | 16714-0878-01 | $7.67/gram |
| Lidocaine 4% Ointment (Aspercreme) | 41167-0584-00 | $2.61/gram |

293.    Medline billed $1,787.00 for a 250 gram supply of Lidocaine 5% Ointment under NDC No. 64380-0789-32.

294.    Medline billed $1,534.60 for a 250 gram supply of Lidocaine 5% Ointment under NDC No. 16714-0878-01.

---

[4] All references to AWP unit pricing and AWP or WAC package pricing are rounded to the nearest whole cent, resulting in an approximate calculation to the nearest cent.

295.    Under both NDC nos. 64380-0789-32 and 16714-0787-01, Medline submitted billing for 250 grams of Lidocaine, even though the NDCs correspond with drug manufactures that supply Lidocaine in amounts of 35.44 grams per unit, meaning that Medline was only providing claimants with 248.08 grams.

296.    As shown above, AWP of a 35.44 gram supply of Lidocaine 5% Ointment sold under NDC No. 64380-0789-32 was approximately $316.66.

297.    Medline could charge approximately $1,773.30 for a 248.08 gram supply of Lidocaine 5% Ointment (after application of the 20% reduction required under applicable New York law) under NDC No. 64380-0789-32.

298.    The WAC for Lidocaine 5% Ointment sold under NDC No. 64380-0789-32 is $15.00 per 35.44 grams.

299.    Acquiring Lidocaine 5% Ointment at or around the WAC meant that the Defendants realized a profit of over $1,668.00 each time that Medline billed Lidocaine 5% Ointment under NDC No. 64380-0789-32.

300.    As shown above, AWP of a 35.44 gram supply of Lidocaine 5% Ointment sold under NDC No. 16714-0878-01 was approximately $271.93.

301.    Medline could charge approximately $1,522.80 for a 248.08 gram supply of Lidocaine 5% Ointment (after application of the 20% reduction required under applicable New York law) under NDC No. 16714-0878-01.

302.    The WAC for Lidocaine 5% Ointment sold under NDC No. 16714-0878-01 is $64.58 per 35.44 grams.

303.    Acquiring Lidocaine 5% Ointment at or around the WAC meant that the Defendants realized a profit of over $1,070.00 each time that Medline billed for Lidocaine 5% Ointment under NDC No. 16714-0878-01.

304.    The Defendants generated substantial profits because they knew that all No-Fault claims were priced and paid according to the AWP and that they could acquire the billed-for drugs at a cost well below the drugs' AWP.

305.    A true and accurate representation of an invoice for Lidocaine 5% Ointment as billed to Liberty Mutual for NDC no. 64380-0789-32 for Liberty Mutual claimant D.A., Claim No. 056906821, is below.

| DATE OF SERVICE | PLACE OF SERVICE INCLUDING ZIP CODE | DESCRIPTION OF TREATMENT OR HEALTH SERVICE RENDERED | FEE SCHEDULE TREATMENT CODE | CHARGES |
|---|---|---|---|---|
| 06/07/2024 | 444 W. JERICHO TURNPIKE HUNTINGTON NY 11743 | CYCLOBENZAPRINE TAB 5MG (30mg) | 52817033050   1 | 39.36 |
| 06/07/2024 | 444 W. JERICHO TURNPIKE HUNTINGTON NY 11743 | LIDOCAINE 5% OINT (250gm) | 64380078932   1 | 1787.00 |
| 06/07/2024 | 444 W. JERICHO TURNPIKE HUNTINGTON NY 11743 | DICLOFENAC GEL 3% (200gm) | 51672136307   1 | 1887.20 |
| | | | TOTAL CHARGES TO DATE $ | 3713.56 |

15. REPORT OF SERVICES RENDERED -- ATTACH ADDITIONAL SHEETS IF NECESSARY

306.    A true and accurate representation of an invoice for Lidocaine 5% Ointment as billed to Liberty Mutual for NDC 16714-0878-01 for Liberty Mutual claimant S.H., Claim No. 057584932, is below.

| DATE OF SERVICE | PLACE OF SERVICE INCLUDING ZIP CODE | DESCRIPTION OF TREATMENT OR HEALTH SERVICE RENDERED | FEE SCHEDULE TREATMENT CODE | CHARGES |
|---|---|---|---|---|
| 08/19/2024 | 444 W. JERICHO TURNPIKE HUNTINGTON NY 11743 | DICLOFENAC SODIUM GEL 3% (200gm) | 51672136307  1 | 1887.20 |
| 08/19/2024 | 444 W. JERICHO TURNPIKE HUNTINGTON NY 11743 | NAPROXEN 500MG TAB (60mg) | 50228043601  1 | 62.41 |
| 08/19/2024 | 444 W. JERICHO TURNPIKE HUNTINGTON NY 11743 | LIDOCAINE 5% OINT  (250) | 16714087801  1 | 1534.60 |
|  |  |  | TOTAL CHARGES TO DATE $ | 3484.21 |

**15. REPORT OF SERVICES RENDERED -- ATTACH ADDITIONAL SHEETS IF NECESSARY**

307. Medline generated substantial profits because they knew that all No-Fault claims were priced and paid according to the AWP and that they could acquire the billed-for drugs at a cost well below the drugs' AWP.

308. Medline also purposefully misrepresented the its fulfillment of the prescriptions by submitting billing for 250 grams that were prescribed, when it provided patients with 248.08 grams.

309. All fraudulent Lidocaine 5% Ointment billed in connection with Liberty Mutual claimants traveled through U.S Mail.

**2.    Diclofenac Sodium 3% Gel**

310. Foremost, 135 Jericho, and  Medline also exploited the AWP and WAC for Diclofenac Sodium 3% Gel, which Foremost, 135 Jericho, and Medline billed under NDC No. 51672-1363-07 for Diclofenac Sodium 3% Gel.

311. For example, Foremost, 135 Jericho, and Medline billed $1,887.20 for a 200 gram supply of Diclofenac Sodium 3% Gel under NDC No. 51672-1363-07.

312.    The original published AWP of a 100 gram supply of Diclofenac Sodium 3% Gel sold under NDC No. 51672-1363-07 was approximately $1,179.46.

313.    In or around November 2023, the published AWP of a 100 gram supply of Diclofenac Sodium 3% Gel sold under NDC No. 51672-1363-07 was modified to approximately $111.56.

314.    Upon information and belief, all dates of service for the Pharmacy Defendants including NDC No. 51672-1363-07 were performed after November 2023.

315.    A true and accurate example of Foremost billing for NDC No. 51672-1363-07 after November 2023 is depicted below:

| DATE OF SERVICE | PLACE OF SERVICE INCLUDING ZIP CODE | DESCRIPTION OF TREATMENT OR HEALTH SERVICE RENDERED | FEE SCHEDULE TREATMENT CODE | | CHARGES |
|---|---|---|---|---|---|
| 08/10/2024 | 814 MERRICK RD BALDWIN NY 11510 | IBUPROFEN 800MG TAB (45) | 64380080707 | 1 | 24.66 |
| 08/10/2024 | 814 MERRICK RD BALDWIN NY 11510 | TIZANIDINE HCL 4MG TAB (15) | 55111018010 | 1 | 17.58 |
| 08/10/2024 | 814 MERRICK RD BALDWIN NY 11510 | DICLOFENAC SODIUM GEL 3% (200gm) | 51672136307 | 1 | 1887.20 |
| 08/10/2024 | 814 MERRICK RD BALDWIN NY 11510 | LIDOCAINE 5% OIT (250) | 68462041827 | 1 | 1523.80 |

15. REPORT OF SERVICES RENDERED -- ATTACH ADDITIONAL SHEETS IF NECESSARY

316.    A true and accurate example of 135 Jericho billing for NDC No. 51672-1363-07 after November 2023 is depicted below:

| 15. REPORT OF SERVICES RENDERED -- ATTACH ADDITIONAL SHEETS IF NECESSARY | | | | |
|---|---|---|---|---|
| DATE OF SERVICE | PLACE OF SERVICE INCLUDING ZIP CODE | DESCRIPTION OF TREATMENT OR HEALTH SERVICE RENDERED | FEE SCHEDULE TREATMENT CODE | CHARGES |
| 07/02/2024 | 135 W. JERICHO TPKE HUNTINGTON NY 11746 | LIDOCAINE 5% OINT (250) | 16714087801  1 | 1534.60 |
| 07/02/2024 | 135 W. JERICHO TPKE HUNTINGTON NY 11746 | IBUPROFEN 800MG TAB (60) | 59651036205  1 | 32.88 |
| 07/02/2024 | 135 W. JERICHO TPKE HUNTINGTON NY 11746 | TIZANIDINE 4MG TAB 4MG (30mg) | 16714017201  1 | 35.16 |
| 07/02/2024 | 135 W. JERICHO TPKE HUNTINGTON NY 11746 | DICLOFENAC SODIUM GEL 3% (200gm) | 51672136307  1 | 1887.20 |

317.    A true and accurate example of Medline billing for NDC No. 51672-1363-07 after November 2023 is depicted below:

| 15. REPORT OF SERVICES RENDERED -- ATTACH ADDITIONAL SHEETS IF NECESSARY | | | | |
|---|---|---|---|---|
| DATE OF SERVICE | PLACE OF SERVICE INCLUDING ZIP CODE | DESCRIPTION OF TREATMENT OR HEALTH SERVICE RENDERED | FEE SCHEDULE TREATMENT CODE | CHARGES |
| 06/05/2024 | 444 W. JERICHO TURNPIKE HUNTINGTON NY 11743 | CYCLOBENZAPRINE TAB 5MG (30mg) | 52817033050  1 | 39.36 |
| 06/05/2024 | 444 W. JERICHO TURNPIKE HUNTINGTON NY 11743 | LIDOCAINE 5% OINT (250gm) | 64380078932  1 | 1787.00 |
| 06/05/2024 | 444 W. JERICHO TURNPIKE HUNTINGTON NY 11743 | DICLOFENAC GEL 3% (200gm) | 51672136307  1 | 1887.20 |

318.    However, there is no evidence that Diclofenac Sodium 3% Gel and Diclofenac Sodium 1% Gel could not have been provided at a fraction of the cost.

| **Drug** | **NDC** | **AWP** |
|---|---|---|
| Diclofenac Sodium 3% Gel | 51672-1363-07 | $1.12/gram |
| Diclofenac Sodium 1% Gel (Voltaren) | 50090-6202-00 | $0.31/gram |

319.    Foremost, 135 Jericho, and Medline could charge approximately $178.50 for a 200 gram supply of Diclofenac Sodium 3% Gel (after application of the 20% reduction required under applicable New York law) under NDC No. 51672-1363-07.

320.   The WAC for Diclofenac Sodium 3% Gel sold under NDC No. 51672-1363-07 is $92.97 per 100 gram.

321.   Acquiring Diclofenac Sodium 3% Gel at or around the WAC meant that the Defendants realized a profit of over $1,701.00 each time that Foremost, 135 Jericho, and Medline billed for 200 units of Diclofenac Sodium 3% Gel under NDC No. 51672-1363-07.

322.   Foremost, 135 Jericho, and Medline generated substantial profits because they knew that all No-Fault claims were priced and paid according to the AWP and that they could acquire the billed-for drugs at a cost well below the drugs' AWP.

323.   A true and accurate representation of an invoice for Diclofenac Sodium 3% Gel  as billed to Liberty Mutual claimant T.F., Claim No. 056119093, is below:

| 15. REPORT OF SERVICES RENDERED -- ATTACH ADDITIONAL SHEETS IF NECESSARY | | | | |
|---|---|---|---|---|
| DATE OF SERVICE | PLACE OF SERVICE INCLUDING ZIP CODE | DESCRIPTION OF TREATMENT OR HEALTH SERVICE RENDERED | FEE SCHEDULE TREATMENT CODE | CHARGES |
| 07/19/2024 | 444 W. JERICHO TURNPIKE HUNTINGTON NY 11743 | IBUPROFEN 800 MG TAB (30) | 65162046610   1 | 19.25 |
| 07/19/2024 | 444 W. JERICHO TURNPIKE HUNTINGTON NY 11743 | TIZANIDINE 4MG CAP (30mg) | 70710111208   1 | 82.49 |
| 07/19/2024 | 444 W. JERICHO TURNPIKE HUNTINGTON NY 11743 | LIDOCAINE 5% OINT (250gm) | 64380078932   1 | 1787.00 |
| 07/19/2024 | 444 W. JERICHO TURNPIKE HUNTINGTON NY 11743 | DICLOFENAC SODIUM GEL 3% (200gm) | 51672136307  1 | 1887.20 |
|  |  |  | TOTAL CHARGES TO DATE $ | 3775.94 |

324.   The Defendants generated substantial profits because they knew that all No-Fault claims were priced and paid according to the AWP and that they could acquire the billed-for drugs at a cost well below the drugs' AWP.

325.   All fraudulent Diclofenac Sodium 3% Gel  billed in connection with Liberty Mutual claimants traveled through U.S Mail.

### H.    BILLING FOR PRESCRIPTIONS NOT DELIVERED

#### 1.    Foremost

326.    Foremost billed liberty mutual for prescriptions that were not delivered to Liberty Mutual claimants.

327.    Foremost submitted three bills for three deliveries of unnecessary pain products to Claimant M.B. (Claim No. 058024844).  Below is a true and accurate representation of the billing submitted for October 18, 2024:

| DATE OF SERVICE | PLACE OF SERVICE INCLUDING ZIP CODE | DESCRIPTION OF TREATMENT OR HEALTH SERVICE RENDERED | FEE SCHEDULE TREATMENT CODE | | CHARGES |
|---|---|---|---|---|---|
| 10/18/2024 | 814 MERRICK RD BALDWIN NY 11510 | LIDOCAINE 5% OINT (248.08) | 51672302009 | 1 | 1773.28 |
| 10/18/2024 | 814 MERRICK RD BALDWIN NY 11510 | CYCLOBENZAPRINE HCL 7.5 MG ORAL TAB (30mg) | 69420100101 | 1 | 150.67 |
| 10/18/2024 | 814 MERRICK RD BALDWIN NY 11510 | DICLOFENAC SODIUM 2% SOL (112) | 68180053701 | 1 | 2149.15 |
| | | | TOTAL CHARGES TO DATE $ | | 4073.10 |

*15. REPORT OF SERVICES RENDERED -- ATTACH ADDITIONAL SHEETS IF NECESSARY*

328.    One month later, Foremost submitted billing for an additional round of unnecessary pain products for November 21, 2024.  Below is a true and accurate depiction of the November billing:

| DATE OF SERVICE | PLACE OF SERVICE INCLUDING ZIP CODE | DESCRIPTION OF TREATMENT OR HEALTH SERVICE RENDERED | FEE SCHEDULE TREATMENT CODE | CHARGES |
|---|---|---|---|---|
| 11/21/2024 | 814 MERRICK RD BALDWIN NY 11510 | CYCLOBENZAP RINE HYDROCHLORIDE 7.5 MG TAB (30un) | 69420100101 | 150.67 |
| 11/21/2024 | 814 MERRICK RD BALDWIN NY 11510 | DICLOFENAC SODIUM 2% SOL (112gm) | 72603020701 | 2137.41 |
| 11/21/2024 | 814 MERRICK RD BALDWIN NY 11510 | LIDOCAINE 5% OINT (248.08gm) | 51672302009 | 1773.28 |

*15. REPORT OF SERVICES RENDERED -- ATTACH ADDITIONAL SHEETS IF NECESSARY*

329.     Approximately 21 days later Foremost submitting billing for a third delivery of the same unnecessary pain products.  Below is a true and accurate representation of the December billing:

| 15. REPORT OF SERVICES RENDERED -- ATTACH ADDITIONAL SHEETS IF NECESSARY | | | | |
|---|---|---|---|---|
| DATE OF SERVICE | PLACE OF SERVICE INCLUDING ZIP CODE | DESCRIPTION OF TREATMENT OR HEALTH SERVICE RENDERED | FEE SCHEDULE TREATMENT CODE | CHARGES |
| 12/12/2024 | 814 MERRICK RD BALDWIN NY 11510 | DICLOFENAC SODIUM 2% SOL (112gm) | 68180053701 | 2149.15 |
| 12/12/2024 | 814 MERRICK RD BALDWIN NY 11510 | LIDOCAINE 5% OINT (248.08gm) | 51672302009 | 1773.28 |
| 12/12/2024 | 814 MERRICK RD BALDWIN NY 11510 | CYCLOBENZAP RINE HYDROCHLORIDE 7.5 MG TAB (30un) | 69420100101 | 150.67 |
| | | | TOTAL CHARGES TO DATE $ | 4073.10 |

330.     Claimant M.B. testified during an examination under oath on February 26, 2025.  During that examination, she testified that she had only received two deliveries of prescriptions.  Below is a true and accurate depiction of the relevant portion of her testimony:

```
    Q      How many deliveries of the medication
have you received?
    A      Two.


    Q       Were you able to choose which
pharmacy filled the prescription?


    A      No.
```

331.    The billing from Foremost for the December delivery is fraudulent and traveled through the U.S. Mail.

332.    All billing for prescriptions that were not delivered to Liberty Mutual claimants is fraudulent and traveled through the U.S. Mail.

### 2.    **Medline**

333.    Medline billed for prescriptions not delivered to Liberty Mutual claimants.

334.    Medline submitted billing for four deliveries of Lidocaine 5% Ointment, Diclofenac Sodium 2% Gel, and Cyclobenzaprine 7.5mg tablets to Claimant K.T. (Claim No. 058200897).

335.    Claimant K.T. did not receive Diclofenac Sodium 2% Gel, or any Diclofenac Sodium Gel.

336.    The first bill was for November 7, 2024.  Below is a true and accurate depiction of the billing submitted.

| DATE OF SERVICE | PLACE OF SERVICE INCLUDING ZIP CODE | DESCRIPTION OF TREATMENT OR HEALTH SERVICE RENDERED | FEE SCHEDULE TREATMENT CODE | CHARGES |
|---|---|---|---|---|
| 11/07/2024 | 444 W. JERICHO TURNPIKE HUNTINGTON NY 11743 | CYCLOBENZAPRINE HCL 7.5 MG ORAL TAB (60mg) | 69420100101   1 | 301.34 |
| 11/07/2024 | 444 W. JERICHO TURNPIKE HUNTINGTON NY 11743 | LIDOCAINE 5% OINT (280) | 51672302009   1 | 1787.00 |
| 11/07/2024 | 444 W. JERICHO TURNPIKE HUNTINGTON NY 11743 | DICLOFENAC SODIUM 2% SOL (112) | 72603020701   1 | 2137.41 |
| | | | TOTAL CHARGES TO DATE $ | 4225.75 |

15. REPORT OF SERVICES RENDERED -- ATTACH ADDITIONAL SHEETS IF NECESSARY

337.    The delivery receipt is split into two receipts for this delivery, asserting that the drugs were delivered to the same person, at the same address but three minutes apart, with seemingly different signatures.

338.    Below are true and accurate representations of the November delivery receipts:[5]

 

339.    Medline then submitted billing for a December 2024 delivery of the same unnecessary pain products.  Below is a true and accurate depiction of the December billing.

---

[5] All delivery receipts are redacted in accordance with State and Federal Law requirements, unredacted copies are available for the courts review upon request.

15. REPORT OF SERVICES RENDERED -- ATTACH ADDITIONAL SHEETS IF NECESSARY

| DATE OF SERVICE | PLACE OF SERVICE INCLUDING ZIP CODE | DESCRIPTION OF TREATMENT OR HEALTH SERVICE RENDERED | FEE SCHEDULE TREATMENT CODE | CHARGES |
|---|---|---|---|---|
| 12/03/2024 | 444 W. JERICHO TURNPIKE HUNTINGTON NY 11743 | CYCLOBENZAP RINE HYDROCHLORIDE 7.5 MG TAB (60un) | 69420100101 | 301.34 |
| 12/03/2024 | 444 W. JERICHO TURNPIKE HUNTINGTON NY 11743 | LIDOCAINE 5% OINT (250gm) | 51672302009 | 1787.00 |
| 12/03/2024 | 444 W. JERICHO TURNPIKE HUNTINGTON NY 11743 | DICLOFENAC SODIUM 2% SOL (112gm) | 72603020701 | 2137.41 |
| | | | TOTAL CHARGES TO DATE $ | 4225.75 |

340.     The December billing includes the prescription forms which show that the prescription is the same prescription that was ordered in November, with no refills listed on the prescription.  Below are true and accurate representations of the three prescriptions.







341. The December delivery is also split between two delivery receipts. The delivery receipts assert that the prescriptions were delivered at the same time, to the same person, on the same day, but show obvious differences in signature.

342. Below is a true and accurate representation of the delivery receipts for the December delivery:



343.   Medline submitted billing for a January 7, 2025 delivery of the same unnecessary pain products.  Below is a true and accurate representation of the January billing:

| 15. REPORT OF SERVICES RENDERED – ATTACH ADDITIONAL SHEETS IF NECESSARY | | | | |
|---|---|---|---|---|
| DATE OF SERVICE | PLACE OF SERVICE INCLUDING ZIP CODE | DESCRIPTION OF TREATMENT OR HEALTH SERVICE RENDERED | FEE SCHEDULE TREATMENT CODE | CHARGES |
| 01/07/2025 | 444 W. JERICHO TURNPIKE HUNTINGTON NY 11743 | DICLOFENAC SODIUM 2% SOL (112gm) | 72603020701 | 2137.41 |
| 01/07/2025 | 444 W. JERICHO TURNPIKE HUNTINGTON NY 11743 | CYCLOBENZAP RINE HYDROCHLORIDE 7.5 MG TAB (60un) | 69420100101 | 301.34 |
| 01/07/2025 | 444 W. JERICHO TURNPIKE HUNTINGTON NY 11743 | LIDOCAINE 5% OINT (350gm) | 51672302009 | 1787.00 |
| | | | TOTAL CHARGES TO DATE $ | 4225.75 |

344.   Medline then submitted two different delivery receipts for the January 2025 delivery.  Below is a true and accurate representation of the delivery receipts submitted to Liberty Mutual:

 

345.    Medline then submitted billing for unnecessary pain products in February 2025. Below is a true and accurate depiction of the February billing:

| 15. REPORT OF SERVICES RENDERED -- ATTACH ADDITIONAL SHEETS IF NECESSARY | | | | |
| DATE OF SERVICE | PLACE OF SERVICE INCLUDING ZIP CODE | DESCRIPTION OF TREATMENT OR HEALTH SERVICE RENDERED | FEE SCHEDULE TREATMENT CODE | CHARGES |
| --- | --- | --- | --- | --- |
| 02/08/2025 | 444 W. JERICHO TURNPIKE HUNTINGTON NY 11743 | DICLOFENAC SODIUM 2% SOL (112gm) | 72603020701 | 2137.41 |
| 02/08/2025 | 444 W. JERICHO TURNPIKE HUNTINGTON NY 11743 | LIDOCAINE 5% OINT (250gm) | 70752011303 | 1787.20 |
| 02/08/2025 | 444 W. JERICHO TURNPIKE HUNTINGTON NY 11743 | CYCLOBENZAP RINE 7.5 MG TAB (60un) | 69420100101 | 301.34 |
| | | | TOTAL CHARGES TO DATE $ | 4225.95 |

346.    In support of the February billing, Medline submitted a single delivery receipt for this claimant.  Below is a true and accurate depiction of the delivery receipt:



347.    The delivery receipt has all the prescriptions on the same form and has a signature different than any other signature on the delivery receipts submitted to Liberty Mutual.

348.    K.T. appeared for an examination under oath on February 14, 2025, just nine days after the purported February delivery.

349.    The claimant testified that he had received "about two, three" deliveries, not the four that Medline submitted billing for.

350.    The claimant testified that his deliveries included one bottle of pills and containers of Lidocaine, nothing else.  Below is a true and accurate depiction of the relevant portion of the claimant's testimony.

Q    And how many deliveries of the
medication have you received?

A    Not too much.  About two, three.


Q    How soon after the prescription
was the medication delivered to you at
home?

A    It wasn't really a prescription.
They told me that something -- probably
the day after.

Q    And how many bottles of pills do
you receive with each delivery?

A    One.

Q    And how many containers of
lidocaine do you receive with each
delivery?

A    I've never counted.

Q    Is it more than one?

A    Yeah.

Q    And do all the containers of the
lidocaine look the same?

A    Yes.

Q    With that medication that's

delivered, other than the lidocaine and
the bottle of pills that you receive, does
anything else come with that delivery?    

A    No.

351.    All of the billing Medline submitted for this claimant related to Diclofenac Sodium 2% Gel is fraudulent and traveled through U.S. Mail.

352.    The billing for the fourth delivery of prescriptions is fraudulent and traveled through U.S. Mail.

353.    All billing by Medline for prescriptions not delivered is fraudulent and traveled through the U.S. Mail.

## VI.    SPECIFIC ALLEGATIONS OF MAIL FRAUD RACKETEERING ACTIVITY

354.    The Defendants (a) created, prepared, and submitted (or caused to be created, prepared, and submitted) false No-Fault claim reimbursement documentation, (b) intentionally violated the laws of the United States by devising and intending to devise, schemes to defraud and obtain money and property using false and fraudulent pretenses and representations, and (c) placed, or caused to be placed, in a post office and/or authorized depository for mail matter, things to be sent and delivered by the United States Postal Service, in violation of 18 U.S.C. § 1341 (mail fraud) to execute, or attempt, such fraudulent schemes.

355.    Unless otherwise pled to the contrary, all documents, notes, reports, invoices, prescription forms, delivery receipts, health insurance claim forms, assignment of benefit forms, letters of medical necessity, peer-review rebuttals, other No-Fault claim reimbursement documents, letters, and requests for payment in connection with the insurance claims referenced throughout this pleading (and accompanying exhibits) traveled through the U.S. Mail.

356.    Every automobile insurance claim detailed within this Complaint involved at least two uses of the U.S. Mail, including the mailing of, among other things, the notice of claim, initial policies, insurance payments, claim-related payments, and the return of the canceled payment instruments to the financial institution(s) from which the draft(s) were drawn.

A.    **ATLANTIC MEDICAL ENTERPRISE**

357.    Foremost, Ali, 135 Jericho, Hassan, Liaqat, Medline, Sheraz, Wellness Worx and Ferhan either personally used (or caused the use of) the U.S. Mail to further this fraudulent scheme by causing claimants' prescription records and treatment records and/or invoices/bills from Foremost, Ali, 135 Jericho, Hassan, Liaqat, Medline, Sheraz, Wellness Worx and Ferhan to be mailed to Liberty Mutual (and/or counsel for claimants) or acted with knowledge that the use of the U.S. Mail would follow in the ordinary course of business.

358.    Foremost, Ali, 135 Jericho, Hassan, Liaqat, Medline, Sheraz, Wellness Worx and Ferhan caused Foremost, 135 Jericho, Medline and Wellness Worx to falsely certify that they were eligible to be reimbursed under New York's No-Fault Laws each time that Atlantic Medical and/or Foremost, 135 Jericho, Medline or Wellness Worx mailed (or was caused to mail) a demand for payment (i.e., invoice or bill) to Liberty Mutual.

359.    Foremost, Ali, 135 Jericho, Hassan, Liaqat, Medline, Sheraz, Wellness Worx and Ferhan participated in the Atlantic Medical enterprise by fulfilling the unlawful prescriptions.

360.    Foremost, Ali, 135 Jericho, Hassan, Liaqat, Medline, Sheraz, Wellness Worx and Ferhan's participation in the operation and management of the Atlantic Medical enterprise, which included, among other things, (a) facilitating unlawful prescriptions between Foremost, 135 Jericho, Medline and Wellness Worx and Atlantic Medical, (b) dispensing medically unnecessary and ineffective drugs and medications to Foremost, 135 Jericho, Medline and Wellness Worx patients based on the unlawful Atlantic Medical referrals, and (c) causing Foremost, 135 Jericho, Medline and Wellness Worx to submit false and fraudulent No-Fault benefit claims to Liberty Mutual based on the unlawful Atlantic Medical referrals, rendered the Pharmacy Defendants completely ineligible for No-Faul reimbursement under New York law.

361.    As a result of the above-described conduct, Foremost, Ali, 135 Jericho, Hassan, Liaqat, Medline, Sheraz, Wellness Worx and Ferhan purposely caused Atlantic Medical to make a misrepresentation every time that Atlantic Medical mailed (or was caused to mail) a document referring a Liberty Mutual claimant for unnecessary prescription medication to the Pharmacy Defendants to Liberty Mutual claiming eligibility for No-Fault reimbursement.

362.    Moreover, because (a) the Defendants engaged in (or caused) the above-described unlawful conduct through their participation in the operation and management of the Atlantic Medical enterprise, (b) the Defendants caused Atlantic Medical to make unlawful referrals and allowed the Pharmacy Defendants to seek No-Fault reimbursement from Liberty Mutual (even though the Pharmacy Defendants were not lawfully entitled to such reimbursement), and (c) Atlantic Medical and the Pharmacy Defendants used (or were caused to use) the U.S. Mail to seek reimbursement, it is clear that the Defendants committed mail fraud.

363.    At all relevant times Foremost, Ali, 135 Jericho, Hassan, Liaqat, Medline, Sheraz, Wellness Worx and Ferhan knew that Foremost, 135 Jericho, Medline and Wellness Worx used (including its employees, owner(s), contractors, and agents) a customer, a claimant, an insurance carrier, a claimant's attorney, other healthcare providers, or Liberty Mutual would use (or be caused to use) the U.S. Mail in connection with each of the fraudulent claims, including issuing payments based upon the documentation mailed by (or on behalf of) the Pharmacy Defendants based on an Atlantic Medical referral.

364.    Liberty Mutual estimates that the unlawful operation of the Atlantic Medical enterprise generated hundreds of mailings. A table highlighting selected examples of mailings made in furtherance of this scheme is annexed as Exhibit 2 and incorporated herein as if outlined in its entirety.

### B.  VISTA MEDICAL ENTERPRISE

365.    Foremost, Ali, Medline and Sheraz either personally used (or caused the use of) the U.S. Mail to further this fraudulent scheme by causing claimants' prescription records and treatment records and/or invoices/bills from Foremost, Ali, Medline and Sheraz to be mailed to Liberty Mutual (and/or counsel for claimants) or acted with knowledge that the use of the U.S. Mail would follow in the ordinary course of business.

366.    Foremost, Ali, Medline and Sheraz caused Foremost and Medline to falsely certify that they were eligible to be reimbursed under New York's No-Fault Laws each time that Vista Medical, Foremost and/or Medline mailed (or was caused to mail) a demand for payment (i.e., invoice or bill) to Liberty Mutual.

367.    Foremost, Ali, Medline and Sheraz participated in the Vista Medical enterprise by fulfilling the unlawful prescriptions.

368.    Foremost, Ali, Medline and Sheraz's participation in the operation and management of the Vista Medical enterprise, which included, among other things, (a) facilitating unlawful prescriptions between Foremost, Medline and Vista Medical, (b) dispensing medically unnecessary and ineffective drugs and medications to Foremost and Medline patients based on the unlawful Vista Medical referrals, and (c) causing Foremost and Medline to submit false and fraudulent No-Fault benefit claims to Liberty Mutual based on the unlawful Vista Medical referrals, rendered Foremost and Medline completely ineligible for No-Faul reimbursement under New York law.

369.    As a result of the above-described conduct, Foremost, Ali, Medline and Sheraz purposely caused Vista Medical to make a misrepresentation every time that Vista Medical mailed

(or was caused to mail) a document referring a Liberty Mutual claimant for prescription medication to Foremost and Medline to Liberty Mutual claiming eligibility for No-Fault reimbursement.

370.    Moreover, because (a) Foremost, Ali, Medline and Sheraz engaged in (or caused) the above-described unlawful conduct through their participation in the operation and management of the Vista Medical enterprise, (b) Foremost, Ali, Medline and Sheraz caused Vista Medical to make unlawful referrals to allow Foremost and Medline to seek No-Fault reimbursement from Liberty Mutual (even though Foremost and Medline were not lawfully entitled to such reimbursement), and (c) Vista Medical, Foremost and Medline used (or were caused to use) the U.S. Mail to seek reimbursement, it is clear that Foremost, Ali, Medline and Sheraz committed mail fraud.

371.    At all relevant times Foremost, Ali, Medline and Sheraz knew that Foremost and Medline used (including its employees, owner(s), contractors, and agents) a customer, a claimant, an insurance carrier, a claimant's attorney, other healthcare providers, or Liberty Mutual would use (be caused to use) the U.S. Mail in connection with each of the fraudulent claims, including issuing payments based upon the documentation mailed by (or on behalf of) Foremost and Medline based on a Vista Medical referral.

372.    Liberty Mutual estimates that the unlawful operation of the Vista Medical enterprise generated a hundreds of mailings. A table highlighting selected examples of mailings made in furtherance of this scheme is annexed as Exhibit 2 and incorporated herein as if outlined in its entirety.

## VII. <u>SPECIFIC ALLEGATIONS OF FRAUDULENT CONCEALMENT AND MATERIAL MISREPRESENTATIONS MADE TO AND RELIED UPON BY LIBERTY MUTUAL</u>

### A. <u>ATLANTIC MEDICAL ENTERPRISE</u>

373.    At all relevant times during the operation of the Atlantic Medical enterprise, the Defendants purposely caused the Pharmacy Defendants to falsely certify that they were eligible to be reimbursed under New York's No-Fault Laws to induce Liberty Mutual to promptly pay charges related to prescription drugs and other pharmacy services purportedly provided to Liberty Mutual claimants who were caused to be customers of the Pharmacy Defendants by Atlantic Medical referrals.

374.    At all relevant times, the Defendants directly participated in the operation and management of Atlantic Medical by directing unlawful referrals for prescriptions.

375.    Because Ali, Hassan, Liaqat and Sheraz was responsible for causing the Pharmacy Defendants' (a) billing Liberty Mutual for drugs that were not medically necessary and were completely unjustified to treat the Liberty Mutual claimants' purported injuries, (b) falsely charging for drugs with the knowledge that such drugs were not lawfully reimbursable under New York's No-Fault laws, (c) charging Liberty Mutual for drugs at grossly excessive rates, (d) dispensing drugs and medications in violation of applicable regulatory and licensing requirements, and/or (e) maintaining unlawful relationships with prescribers and inducing them, through financial means or otherwise, to furnish prescriptions for medically unnecessary drugs that were to be filled by the Pharmacy Defendants, then the Pharmacy Defendants were caused to falsely claim eligibility for No-Fault reimbursement each and every time that the Pharmacy Defendants sought No-Fault reimbursement from Liberty Mutual.

376.    As alleged above, the Defendants created and submitted to Liberty Mutual No-Fault claim reimbursement documents and demands for payment relative to prescription drugs and other pharmacy services that were (a) unlawful, (b) fraudulently reported, (c) completely unnecessary, (d) falsely charged, and/or (e) not actually provided as represented.

377.    Such conduct is unlawful, and rendered each such claim non-compensable under New York's No-Fault laws.

378.    Many of the Defendants' false, fraudulent, and unlawful acts are not readily evident within the documents submitted to Liberty Mutual by the Defendants, and upon which Liberty Mutual relied in adjusting the claims and tendering payment in connection with each discrete patient claim.

379.    Claims under New York's No-Fault laws can only be submitted, and reimbursed, for services that were provided in accordance with all applicable New York state licensing requirements.

380.    Thus, every time that Ali, Hassan, Liaqat and Sheraz caused Foremost, 135 Jericho, Medline and Wellness Worx to submit No-Fault reimbursement demands to Liberty Mutual, Ali, Hassan, Liaqat and Sheraz necessarily certified that Foremost, 135 Jericho, Medline and Wellness Worx were eligible to be reimbursed under New York's No-Fault laws.

381.    The full extent of Ali, Hassan, Liaqat and Sheraz's fraudulent and unlawful acts relative to their participation in the Atlantic Medical enterprise was not known to Liberty Mutual until shortly before it commenced this action.

### B.    VISTA MEDICAL P.C. ENTERPRISE

382.    At all relevant times during the operation of the Vista Medical enterprise Ali, and Sheraz caused Foremost and Medline to falsely certify that they were eligible to be reimbursed

under New York's No-Fault Laws to induce Liberty Mutual to promptly pay charges related to prescription drugs and other pharmacy services purportedly provided to Liberty Mutual claimants who were caused to be customers of Foremost and Medline by Vista Medical referrals.

383.    At all relevant times, Foremost, Ali, Medline and Sheraz directly participated in the operation and management of Vista Medical by directing unlawful referrals for prescriptions.

384.    Because Ali and Sheraz were responsible for causing Foremost and Medline's (a) billing Liberty Mutual for drugs that were not medically necessary and were completely unjustified to treat the Liberty Mutual claimants' purported injuries, (b) falsely charging for drugs with the knowledge that such drugs were not lawfully reimbursable under New York's No-Fault laws, (c) charging Liberty Mutual for drugs at grossly excessive rates, (d) dispensing drugs and medications in violation of applicable regulatory and licensing requirements, and/or (e) maintaining unlawful relationships with prescribers and inducing them, through financial means or otherwise, to furnish prescriptions for medically unnecessary drugs that were to be filled by Foremost and Medline, then Foremost and Medline were caused to falsely claim eligibility for No-Fault reimbursement each and every time that Foremost and Medline sought No-Fault reimbursement from Liberty Mutual.

385.    As alleged above, Ali and Sheraz caused Foremost and Medline to create and submit to Liberty Mutual No-Fault claim reimbursement documents and demands for payment relative to prescription drugs and other pharmacy services that were (a) unlawful, (b) fraudulently reported, (c) completely unnecessary, (d) falsely charged, and/or (e) not actually provided as represented.

386.    Such conduct is unlawful, and rendered each such claim non-compensable under New York's No-Fault laws.

387.    Many of the Defendants' false, fraudulent, and unlawful acts are not readily evident within the documents submitted to Liberty Mutual by Foremost, Ali, Medline and Sheraz, and upon which Liberty Mutual relied in adjusting the claims and tendering payment in connection with each discrete patient claim.

388.    Claims under New York's No-Fault laws can only be submitted, and reimbursed, for services that were provided in accordance with all applicable New York state licensing requirements.

389.    Thus, every time that Ali and Sheraz caused Foremost and Medline to submit No-Fault reimbursement demands to Liberty Mutual, Ali and Sheraz necessarily certified that Foremost and Medline were eligible to be reimbursed under New York's No-Fault laws.

390.    The full extent of Foremost, Ali, Medline and Sheraz's fraudulent and unlawful acts relative to their participation in the Vista Medical enterprise was not known to Liberty Mutual until shortly before it commenced this action.

## VIII.    LIBERTY MUTUAL'S JUSTIFIABLE RELIANCE

391.    Each claim submitted to Liberty Mutual by the Pharmacy Defendants' were verified according to Insurance Law § 403.

392.    Ali, Hassan, Liaqat, Sheraz and Ferhan, as owners of the Pharmacy Defendants, were responsible for the conduct of Foremost, 135 Jericho, Medline and Wellness Worx in accordance with New York law.

393.    To induce Liberty Mutual to promptly pay the Pharmacy Defendants' patient invoices, the Defendants submitted (or caused to be submitted) to Liberty Mutual NF-3 bills certifying that the Pharmacy Defendants were eligible to be reimbursed under New York's No-Fault Laws.

394.    Further, to induce Liberty Mutual to promptly pay the fraudulent charges for prescription drug and other pharmacy services purportedly provided to Liberty Mutual claimants, the Defendants hired attorneys to pursue collection of the fraudulent charges from Liberty Mutual. These attorneys routinely filed time-consuming and expensive lawsuits and arbitration matters against Liberty Mutual.

395.    Liberty Mutual is under statutory and contractual obligations to promptly and fairly process claims within 30 days.  The facially valid documents submitted to Liberty Mutual by (or on behalf of) the Pharmacy Defendants' in support of the fraudulent charges at issue, combined with the material misrepresentations described above, were designed to, and did, cause Liberty Mutual to justifiably rely on them.

396.    The Defendants concealed from Liberty Mutual the truth regarding the Pharmacy Defendants' reimbursement eligibility under New York law.

397.    In reasonable reliance on these misrepresentations, Liberty Mutual paid money to the Pharmacy Defendants to its detriment.

398.    Liberty Mutual would not have paid these monies had the Defendants provided true and accurate information about the Pharmacy Defendants reimbursement eligibility under New York law, including (a) the Pharmacy Defendants' No-Fault reimbursement eligibility under N.Y. Ins. Law § 5101, *et seq*., and (b) the fact and necessity of the services purportedly provided to those Liberty Mutual claimants and customers of the Pharmacy Defendants eligible for insurance coverage under an automobile insurance policy issued by Liberty Mutual.

399.    As a result, Liberty Mutual was caused to pay the Pharmacy Defendants  over $364,113.84 in reasonable reliance on the Pharmacy Defendants' false No-Fault claim

reimbursement documentation and the Defendants' false representations regarding the Pharmacy Defendants' eligibility for reimbursement under New York's No-Fault Laws.

## IX.    **DAMAGES**

400.    The Defendants' pattern of fraudulent conduct injured Liberty Mutual in its business and property by reason of the aforesaid violations of state and federal law.  Although it is not necessary for Liberty Mutual to calculate damages with specificity at this stage in the litigation (whereas Liberty Mutual's damages continue to accrue), Liberty Mutual's injury includes, but is not limited to, compensatory damages for payments in connection with first-party claims in excess of $364,113.84, the exact amount to be determined at trial, including:

a.  Payments made to Foremost Pharmacy LLC in connection with first-party claims in excess of $39,903.41, the exact amount to be determined at trial.  The chart annexed at Exhibit 3, and incorporated herein as if set forth in its entirely, identifies Liberty Mutual's payments to Foremost Pharmacy Inc LLC in connection with first-party ("No-Fault") claims determined to be fraudulent as of the filing of this complaint.

b.  Payments made to 135 Jericho Pharmacy Corp in connection with first-party claims in excess of $53,191.20, the exact amount to be determined at trial.  The chart annexed at Exhibit 4, and incorporated herein as if set forth in its entirely, identifies Liberty Mutual's payments to 135 Jericho Pharmacy Corp in connection with first-party ("No-Fault") claims determined to be fraudulent as of the filing of this complaint.

c.  Payments made to Medline Plus Pharmacy Inc in connection with first-party claims in excess of $248,240.43, the exact amount to be determined at trial.  The chart

annexed at Exhibit 5, and incorporated herein as if set forth in its entirely, identifies Liberty Mutual's payments to Medline Plus Pharmacy Inc in connection with first-party ("No-Fault") claims determined to be fraudulent as of the filing of this complaint.

d.  Payments made to Wellness Worx Incorporated in connection with first-party claims in excess of $22,778.80, the exact amount to be determined at trial.  The chart annexed at Exhibit 6, and incorporated herein as if set forth in its entirely, identifies Liberty Mutual's payments to Wellness Worx Incorporated in connection with first-party ("No-Fault") claims determined to be fraudulent as of the filing of this complaint.

## X.    CAUSES OF ACTION

### COUNT I
### VIOLATIONS OF 18 U.S.C. § 1962(c)
### ATLANTIC MEDICAL & DIAGNOSTIC P.C. ENTERPRISE
### (FOREMOST PHARMACY LLC, WAQAR ALI, 135 JERICHO PHARMACY CORP, MUHAMMAD HASSAN, SADAF LIAQAT, MEDLINE PLUS PHARMACY INC, AHAD SHERAZ, WELLNESS WORX INCORPORATED, AND FERHAN ALI)

401.   Liberty Mutual re-alleges, re-pleads, and incorporates by reference the allegations made in paragraphs 1 through 400 as if set forth fully herein.

402.   In furtherance of their operation and management of Atlantic Medical & Diagnostics P.C ("Atlantic Medical"), Defendants, Foremost, Ali, 135 Jericho, Hassan, Liaqat, Medline, Sheraz, Wellness Worx and Ferhan (collectively, "Count I Defendants") intentionally prepared and mailed (or caused to be prepared and mailed) false No-Fault claim reimbursement documentation in connection with Liberty Mutual insurance claims in furtherance of this scheme to defraud.

403. The Count I Defendants employed two or more mailings to demand and/or receive payment on certain dates, including, but not limited to, those dates identified in the chart at Exhibit 2.

404. Among other things, NF-3 forms, documents, notes, reports, invoices, prescription forms, delivery receipts, health insurance claim forms, assignment of benefit forms, peer-review rebuttals, other No-Fault claim reimbursement documents, letters, and/or payment requests were routinely delivered to Liberty Mutual through the U.S. Mail.

405. Policies of insurance were delivered to two or more Liberty Mutual claimants through the U.S. Mail.

406. Payments made by Liberty Mutual to the Count I Defendants were delivered through the U.S. Mail.

407. As documented above, the Count I Defendants repeatedly and intentionally submitted, or caused to be submitted, NF-3 forms and other claim-related documentation to Liberty Mutual related to Pain Products and other drugs dispensed and delivered by the Count I Defendant to collect payment from Liberty Mutual under the Personal Injury Protection benefits portion of the Liberty Mutual policies and applicable New York No-Fault laws.

408. When the Count I Defendants mailed (or caused the mailing of) NF-3 forms and other claim-related documents to Liberty Mutual seeking No-Fault reimbursement, the Count I Defendants materially misrepresented the No-Fault reimbursement eligibility under New York law.

409. As a result of, and in reasonable reliance upon, the mailing and/or submission of those misleading documents and materially false representations, Liberty Mutual, by its agents and

employees, issued drafts to the Count I Defendants for the benefit of the Count I Defendants that would not otherwise have been paid.

410.    The Count I Defendants' pattern of preparing and mailing (or causing/directing the preparation and mailing of) these documents and other claim-related materials, each appearing legitimate on their face, also prevented Liberty Mutual from discovering this scheme for a significant period, thus enabling the Count I Defendants to continue this scheme without being detected.

411.    The facts set forth above constitute indictable offenses according to 18 U.S.C. § 1341 (mail fraud).

412.    The activities alleged in this case had the direct effect of causing funds to be transferred from Liberty Mutual to Atlantic Medical for the benefit of the Count I Defendants.

413.    Liberty Mutual is in the business of writing insurance and paying claims in the State of New York.  Insurance fraud schemes practiced here and elsewhere have a deleterious impact on Liberty Mutual's overall financial well-being and adversely affect insurance rates.

414.    Atlantic Medical constitutes an enterprise engaged in, and the activities of which affect, interstate commerce.

415.    The Count I Defendants associated with the foregoing enterprise, and participated—both directly and indirectly—in the conduct of this enterprise through a pattern of racketeering activities.

416.    Liberty Mutual is a "person" as defined by 18 U.S.C. § 1961(3) injured in its business or property because of the Count I Defendants' conduct.

417.    The Count I Defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Liberty Mutual's injury.

418.    Because of the Count I Defendants' violations of 18 U.S.C. § 1962(c), Liberty Mutual is entitled to recover from them three times the damages sustained because of the claims submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

**COUNT II**
**VIOLATIONS OF 18 U.S.C. § 1962(d)**
**ATLANTIC MEDICAL & DIAGNOSTIC P.C. ENTERPRISE**
**(FOREMOST PHARMACY LLC, WAQAR ALI, 135 JERICHO PHARMACY CORP, MUHAMMAD HASSAN, SADAF LIAQAT, MEDLINE PLUS PHARMACY INC, AHAD SHERAZ, WELLNESS WORX INCORPORATED, AND FERHAN ALI)**

419.    Liberty Mutual re-alleges, re-pleads, and incorporates by reference the allegations made in paragraphs 1 through 400 as if set forth fully herein.

420.    In furtherance of their operation and management of Atlantic Medical & Diagnostics P.C ("Atlantic Medical"), Defendants, Foremost, Ali, 135 Jericho, Hassan, Liaqat, Medline, Sheraz, Wellness Worx and Ferhan (collectively, "Count II Defendants") intentionally prepared and mailed (or caused to be prepared and mailed) false No-Fault claim reimbursement documentation in connection with Liberty Mutual insurance claims in furtherance of this scheme to defraud.

421.    The Count II Defendants employed two or more mailings to demand and/or receive payment on certain dates, including, but not limited to, those dates identified in the chart at Exhibit 2.

422.    Among other things, NF-3 forms, documents, notes, reports, invoices, prescription forms, delivery receipts, health insurance claim forms, assignment of benefit forms, peer-review rebuttals, other No-Fault claim reimbursement documents, letters, and/or payment requests were routinely delivered to Liberty Mutual through the U.S. Mail.

423.    Policies of insurance were delivered to two or more Liberty Mutual claimants through the U.S. Mail.

424.    Payments made by Liberty Mutual to the Count II Defendants were delivered through the U.S. Mail.

425.    As documented above, the Count II Defendants repeatedly and intentionally submitted, or caused to be submitted, NF-3 forms and other claim-related documentation to Liberty Mutual related to Pain Products and other drugs dispensed and delivered by the Count II Defendants to collect payment from Liberty Mutual under the Personal Injury Protection benefits portion of the Liberty Mutual policies and applicable New York No-Fault laws.

426.    When the Count II Defendants mailed (or caused the mailing of) NF-3 forms and other claim-related documents to Liberty Mutual seeking No-Fault reimbursement, the Count II Defendants materially misrepresented the No-Fault reimbursement eligibility under New York law.

427.    As a result of, and in reasonable reliance upon, the mailing and/or submission of those misleading documents and materially false representations, Liberty Mutual, by its agents and employees, issued drafts to the Count II Defendants for the benefit of one or more of the Count II Defendants that would not otherwise have been paid.

428.    The Count II Defendants' pattern of preparing and mailing (or causing/directing the preparation and mailing of) these documents and other claim-related materials, each appearing legitimate on their face, also prevented Liberty Mutual from discovering this scheme for a significant period, thus enabling the Count II Defendants to continue this scheme without being detected.

429.    The facts set forth above constitute indictable offenses according to 18 U.S.C. § 1341 (mail fraud).

430.    The activities alleged in this case had the direct effect of causing funds to be transferred from Liberty Mutual to Foremost, 135 Jericho, Medline and Wellness Worx for the benefit of the Count II Defendants.

431.    Liberty Mutual is in the business of writing insurance and paying claims in the State of New York.  Insurance fraud schemes practiced here and elsewhere have a deleterious impact on Liberty Mutual's overall financial well-being and adversely affect insurance rates.

432.    Atlantic Medical constitutes an enterprise engaged in, and the activities of which affect, interstate commerce.

433.    The Count II Defendants associated with the foregoing enterprise, and participated—both directly and indirectly—in the conduct of this enterprise through a pattern of racketeering activities.

434.    Liberty Mutual is a "person" as defined by 18 U.S.C. § 1961(3) injured in its business or property because of the Count II Defendants' conduct.

435.    The Count II Defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Liberty Mutual's injury.

436.    Because of the Count II Defendants' violations of 18 U.S.C. § 1962(c), Liberty Mutual is entitled to recover from them three times the damages sustained because of the claims submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

**COUNT III**
**VIOLATIONS OF 18 U.S.C. § 1962(c)**
**VISTA MEDICAL P.C. ENTERPRISE**
**(FOREMOST PHARMACY LLC, WAQAR ALI, MEDLINE PLUS PHARMACY INC.,**
**AND AHAD SHERAZ)**

437.    Liberty Mutual re-alleges, re-pleads, and incorporates by reference all paragraphs set forth above in paragraphs 1 through 400 as if fully set forth herein.

438.    Through their participation in the operation and management of Vista Medical, Defendants, Foremost, Ali, Medline and Sheraz (collectively, "Count III Defendants") conspired with each other to violate 18 U.S.C. § 1962(d).

439.    The Count III Defendants each agreed to participate in a conspiracy to violate 18 U.S.C. § 1962(d) by agreeing to conduct the affairs of Atlantic Medical through a pattern of racketeering activity, including numerous acts of mail fraud as outlined in Exhibit 2, and through the preparation and/or submission of fraudulent insurance claim documents, including NF-3 forms, to Liberty Mutual.

440.    The purpose of the conspiracy was to obtain No-Fault payments from Liberty Mutual on behalf of Foremost and Medline, even though Foremost and Medline, as a result of the Count III Defendants' unlawful conduct, were not eligible to collect such No-Fault payments.

441.    The Count III Defendants were aware of this purpose and agreed to take steps to meet the conspiracy's objectives, including the creation of insurance claim documents containing material misrepresentations and/or material omissions.

442.    Liberty Mutual has been injured in its business and property because of this conspiratorial conduct whereas Liberty Mutual has been induced to make No-Fault claim payments as a result of the defendants' unlawful conduct described herein.

443.    Because of this violation of 18 U.S.C. § 1962(d), the Count III Defendants are jointly and severally liable to Liberty Mutual, and Liberty Mutual is entitled to recover from each of the defendants identified three times the damages sustained because of the claims submitted by the defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

**COUNT IV**
**VIOLATIONS OF 18 U.S.C. § 1962(d)**
**VISTA MEDICAL P.C. ENTERPRISE**
**(FOREMOST PHARMACY LLC, WAQAR ALI, MEDLINE PLUS PHARMACY INC., AND AHAD SHERAZ)**

444.    Liberty Mutual re-alleges, re-pleads, and incorporates by reference all paragraphs set forth above in paragraphs 1 through 400 as if fully set forth herein.

445.    Through their participation in the operation and management of Vista Medical P.C., Defendants, Foremost, Ali, Medline and Sheraz (collectively, "Count IV Defendants") conspired with each other to violate 18 U.S.C. § 1962(d).

446.    The Count IV Defendants each agreed to participate in a conspiracy to violate 18 U.S.C. § 1962(d) by agreeing to conduct the affairs of Vista Medical through a pattern of racketeering activity, including numerous acts of mail fraud as outlined in Exhibit 2, and through the preparation and/or submission of fraudulent insurance claim documents, including NF-3 forms, to Liberty Mutual.

447.    The purpose of the conspiracy was to obtain No-Fault payments from Liberty Mutual on behalf of the Count IV Defendants, even though as a result of the unlawful conduct, they were not eligible to collect such No-Fault payments.

448.    The Count IV Defendants were aware of this purpose and agreed to take steps to meet the conspiracy's objectives, including the creation of insurance claim documents containing material misrepresentations and/or material omissions.

449.    Liberty Mutual has been injured in its business and property because of this conspiratorial conduct whereas Liberty Mutual has been induced to make No-Fault claim payments as a result of the defendants' unlawful conduct described herein.

450.    Because of this violation of 18 U.S.C. § 1962(d), the Count IV Defendants are jointly and severally liable to Liberty Mutual, and Liberty Mutual is entitled to recover from each of the defendants identified three times the damages sustained because of the claims submitted by the defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT V
## COMMON LAW FRAUD
### (Against All Defendants)

451.    Liberty Mutual re-alleges, re-pleads, and incorporates by reference all paragraphs set forth above in paragraphs 1 through 400 as if fully set forth herein.

452.    The Defendants schemed to defraud Liberty Mutual by, among other things, (a) billing Liberty Mutual for drugs that were not medically necessary and were completely unjustified to treat the Liberty Mutual claimants' purported injuries, (b) falsely charging for drugs with the knowledge that such drugs were not lawfully reimbursable under New York's No-Fault laws, (c) charging Liberty Mutual for drugs at grossly excessive rates, (d) dispensing drugs and medications in violation of applicable regulatory and licensing requirements, and/or (e) maintaining unlawful relationships with prescribers and inducing them, through financial means or otherwise, to furnish prescriptions for medically unnecessary drugs that were to be filled by the Pharmacy Defendants.

453.    The Defendants' scheme to defraud Liberty Mutual was dependent upon a succession of material misrepresentations of fact related to the Pharmacy Defendants' eligibility for and entitlement to No-Fault reimbursement under New York law.

454.    The misrepresentations of fact by the Defendants included, but were not limited to, material misrepresentations of fact made in the Pharmacy Defendants' NF-3 forms, prescription forms, patient treatment records, delivery receipts, health insurance claim forms, other No-Fault claim reimbursement documents, letters, and/or payment requests.

455.    The Defendants' representations were false or required disclosure of additional facts to render the documents, information, and materials furnished not misleading.

456.    The misrepresentations were intentionally made by the Defendants in furtherance of their scheme to defraud Liberty Mutual by submitting claims on behalf of the Pharmacy Defendants demanding payment of No-Fault insurance benefits.

457.    The Defendants knew that the representations contained in the No-Fault claim reimbursement documentation relating to Liberty Mutual claimants were false, and were made to induce Liberty Mutual to make payments for claims that were not legitimate or lawfully compensable.

458.    Liberty Mutual reasonably relied, to its detriment, upon the Defendants' material misrepresentations concerning the Pharmacy Defendants eligibility to receive No-Fault reimbursement in paying numerous bills for prescription drugs and other pharmacy expenses according to New York's No-Fault insurance laws.

459.    Liberty Mutual's damages include, but are not necessarily limited to:

    a.    Foremost totaling more than $39,903.41—for prescription drug and other pharmacy expenses and services rendered to Liberty Mutual claimants, even though Foremost was, at all relevant times, ineligible to receive No-Fault reimbursement under New York law.

b. 135 Jericho totaling more than $53,191.20—for prescription drug and other pharmacy expenses and services rendered to Liberty Mutual claimants, even though 135 Jericho was, at all relevant times, ineligible to receive No-Fault reimbursement under New York law.

c. Medline totaling more than $248,240.43—for prescription drug and other pharmacy expenses and services rendered to Liberty Mutual claimants, even though Medline was, at all relevant times, ineligible to receive No-Fault reimbursement under New York law.

d. Wellness Worx totaling more than $22,778.80—for prescription drug and other pharmacy expenses and services rendered to Liberty Mutual claimants, even though Wellness Worx was, at all relevant times, ineligible to receive No-Fault reimbursement under New York law.

**COUNT VI**
**UNJUST ENRICHMENT**
**(Against All Defendants)**

460. Liberty Mutual re-alleges, re-pleads, and incorporates by reference all paragraphs set forth above in paragraphs 1 through 400 as if fully set forth herein.

461. As alleged herein, the Defendants, through various means, conspired to induce Liberty Mutual to make numerous and substantial payments to the Pharmacy Defendants in connection with claims made under New York's No-Fault Laws.

462. When Liberty Mutual paid the Pharmacy Defendants, Liberty Mutual reasonably believed that it was legally obligated to make such payments based upon the misrepresentations and omissions that the Defendants, or those persons working under their control, made (or were

caused to make) concerning the Pharmacy Defendants' reimbursement eligibility under New York's No-Fault Laws.

463.    Every No-Fault reimbursement payment that Liberty Mutual was caused to make to (or for the benefit of) the Pharmacy Defendants during this scheme constitutes a benefit that the Defendants aggressively caused the Pharmacy Defendants to seek and voluntarily accept.

464.    Throughout their scheme, the Defendants caused the Pharmacy Defendants to wrongfully obtain a multitude of payments from Liberty Mutual—totaling over $364,113.84—as a direct and proximate result of the unlawful conduct detailed throughout this Complaint.

465.    Under New York law, the Defendants had no legal right to seek, collect, or retain assigned No-Fault benefit payments made by Liberty Mutual in connection with claims submitted by (or on behalf of) the Defendants because Foremost, 135 Jericho, Medline, and Wellness Worx (a) billed Liberty Mutual for drugs that were not medically necessary and were completely unjustified to treat the Liberty Mutual claimants' purported injuries, (b) falsely charged for drugs with the knowledge that such drugs were not lawfully reimbursable under New York's No-Fault laws, (c) charged Liberty Mutual for drugs at grossly excessive rates, (d) dispensed drugs and medications in violation of applicable regulatory and licensing requirements, and/or (e) maintained unlawful relationships with prescribers and induced them, through financial means or otherwise, to furnish prescriptions for medically unnecessary drugs that were to be filled by Foremost, 135 Jericho, Medline, and Wellness Worx.

466.    As a direct and proximate result of this unlawful conduct relating to the billing for fraudulent, unnecessary, and ineffective drugs with respect to Liberty Mutual claimants, at no point were Foremost, 135 Jericho, Medline, and Wellness Worx ever eligible for reimbursement under New York's No-Fault Laws.

467.    Throughout this scheme, the Defendants obtained substantial monetary benefits as the result of their unlawful conduct, benefits that were derived, in part, directly from the No-Fault reimbursement payments that Liberty Mutual was wrongfully induced to make to Foremost, 135 Jericho, Medline, and Wellness Worx.

468.    Retention of those benefits by any of the Defendants would violate fundamental principles of justice, equity, and good conscience.

### COUNT VII
### DECLARATORY RELIEF UNDER 28 U.S.C. § 2201
### (Against Foremost Pharmacy LLC, 135 Jericho Pharmacy Corp, Medline Plus Pharmacy Inc, and Wellness Worx Incorporated)

469.    Liberty Mutual re-alleges, re-pleads, and incorporates by reference the allegations made in paragraphs 1 through 400 as if set forth fully herein.

470.    To be eligible to receive assigned No-Fault benefits, an assignee provider of healthcare services, including providers of pharmacy services, must adhere to all applicable New York statutes that grant the authority to provide healthcare services in New York.

471.    In view of its (a) billing Liberty Mutual for drugs that were not medically necessary and were completely unjustified as a means of treating the Liberty Mutual claimants' purported injuries, (b) falsely charging for drugs with the knowledge that such drugs were not lawfully reimbursable under New York's No-Fault laws, (c) charging Liberty Mutual for drugs at grossly excessive rates, (d) dispensing drugs and medications in violation of applicable regulatory and licensing requirements, and (e) maintaining unlawful relationships with prescribers and inducing them, through financial means or otherwise, to furnish prescriptions for medically unnecessary drugs that were to be filled by Foremost, 135 Jericho, Medline and Wellness Worx were, at all relevant times, completely ineligible for No-Fault reimbursement under New York law, and thus has no standing to submit or receive assigned No-Fault benefits.

472.    Foremost, 135 Jericho, Medline, and Wellness Worx continue to submit assigned No-Fault claims to Liberty Mutual demanding payment, and other assigned No-Fault claims remain pending with Liberty Mutual.

473.    Foremost, 135 Jericho, Medline, and Wellness Worx continue to challenge Liberty Mutual's prior claim denials.

474.    Foremost, 135 Jericho, Medline, and Wellness Worx continue to commence legal action, including arbitrations filed with the American Arbitration Association, against Liberty Mutual seeking payment of No-Fault benefits allegedly due and owing.

475.    A justifiable controversy exists between Liberty Mutual and Foremost, 135 Jericho, Medline, and Wellness Worx because Foremost, 135 Jericho, Medline, and Wellness Worx reject Liberty Mutual's ability to deny such claims.

476.    Liberty Mutual has no adequate remedy at law.

477.    Foremost, 135 Jericho, Medline, and Wellness Worx also will continue to bill Liberty Mutual for No-Fault Benefit payments absent a declaration by this Court that its activities are unlawful, and that Liberty Mutual has no obligation to pay the pending, previously denied, and/or future No-Fault claims submitted by Foremost, 135 Jericho, Medline, and Wellness Worx.

478.    Accordingly, Liberty Mutual requests a judgment according to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 declaring that (a) that Foremost, 135 Jericho, Medline, and Wellness Worx have no standing to seek, collect, or retain any payments made by Liberty Mutual in connection with assigned No-Fault benefits, and (b) that Liberty Mutual has no legal obligation to make any payment on any unpaid or otherwise pending bills that have been submitted to Liberty Mutual by, or on behalf of, Foremost, 135 Jericho, Medline, and Wellness Worx.

XI.    **DEMAND FOR RELIEF**

WHEREFORE, plaintiffs, LM General Insurance Company, American States Insurance Company, Liberty Mutual Fire Insurance Company, LM Insurance Corporation, and Wausau Underwriters Insurance Company (collectively, "Liberty Mutual") respectfully pray that judgment enter in their favor, as follows:

**COUNT I**
**VIOLATIONS OF 18 U.S.C. § 1962(c)**
**ATLANTIC MEDICAL & DIAGNOSTIC P.C. ENTERPRISE**
**(FOREMOST PHARMACY LLC, WAQAR ALI, 135 JERICHO PHARMACY CORP,**
**MUHAMMAD HASSAN, SADAF LIAQAT, MEDLINE PLUS PHARMACY INC, AHAD**
**SHERAZ, WELLNESS WORX INCORPORATED, AND FERHAN ALI)**

(a) AWARD Liberty Mutual's actual and consequential damages to be established at trial;

(b) AWARD Liberty Mutual's treble damages according to 18 U.S.C. § 1964, interests, costs, and attorneys' fees;

(c) GRANT injunctive relief enjoining the Count I Defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d) GRANT all other relief this Court deems just.

**COUNT II**
**VIOLATIONS OF 18 U.S.C. § 1962(d)**
**ATLANTIC MEDICAL & DIAGNOSTIC P.C. ENTERPRISE**
**(FOREMOST PHARMACY LLC, WAQAR ALI, 135 JERICHO PHARMACY CORP,**
**MUHAMMAD HASSAN, SADAF LIAQAT, MEDLINE PLUS PHARMACY INC, AHAD**
**SHERAZ, WELLNESS WORX INCORPORATED, AND FERHAN ALI)**

(a) AWARD Liberty Mutual's actual and consequential damages to be established at trial;

(b) AWARD Liberty Mutual's treble damages according to 18 U.S.C. § 1964, interests, costs, and attorneys' fees;

(c) GRANT injunctive relief enjoining the Count II Defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d) GRANT all other relief this Court deems just.

## COUNT III
### VIOLATIONS OF 18 U.S.C. § 1962(c)
### VISTA MEDICAL P.C. ENTERPRISE
### (FOREMOST PHARMACY LLC, WAQAR ALI, MEDLINE PLUS PHARMACY INC, AND AHAD SHERAZ)

(a) AWARD Liberty Mutual's actual and consequential damages to be established at trial;

(b) AWARD Liberty Mutual's treble damages according to 18 U.S.C. § 1964, interests, costs, and attorneys' fees;

(c) GRANT injunctive relief enjoining the Count III Defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d) GRANT all other relief this Court deems just.

## COUNT IV
### VIOLATIONS OF 18 U.S.C. § 1962(d)
### VISTA MEDICAL P.C. ENTERPRISE
### (FOREMOST PHARMACY LLC, WAQAR ALI, MEDLINE PLUS PHARMACY INC., AND AHAD SHERAZ)

(a) AWARD Liberty Mutual's actual and consequential damages to be established at trial;

(b) AWARD Liberty Mutual's treble damages according to 18 U.S.C. § 1964, interests, costs, and attorneys' fees;

(c) GRANT injunctive relief enjoining the Count IV Defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d) GRANT all other relief this Court deems just.

## COUNT V
### COMMON LAW FRAUD
### (Against All Defendants)

(a) AWARD Liberty Mutual's actual damages in an amount to be determined at trial;

(b) AWARD Liberty Mutual its costs, including, but not limited to, investigative costs incurred in the detection of the Defendants' illegal conduct;

(c) AWARD Liberty Mutual its costs in defending No-Fault collection suits filed by Foremost, 135 Jericho, Medline and Wellness Worx seeking payment of false and fraudulent invoices; and

(d) GRANT any other relief this Court deems just.

**COUNT VI**
**UNJUST ENRICHMENT**
**(Against All Defendants)**

(a) AWARD Liberty Mutual's actual and consequential damages to be determined at trial; and

(b) GRANT any other relief this Court deems just.

**COUNT VII**
**DECLARATORY RELIEF UNDER 28 U.S.C. § 2201**
**(Against Foremost Pharmacy LLC, 135 Jericho Pharmacy Corp, Medline Plus Pharmacy Inc., Wellness Worx Incorporated )**

(a) DECLARE that Foremost, 135 Jericho, Medline, and Wellness Worx, at all relevant times, were caused to be operated in violation of one or more state licensing requirements applicable to pharmacies, thus rendering Foremost, 135 Jericho, Medline, and Wellness Worx completely ineligible to seek or receive reimbursement under New York's No-Fault laws;

(b) DECLARE that Foremost Pharmacy LLC, 135 Jericho, Medline, and Wellness Worx's activities were unlawful;

(c) DECLARE that Liberty Mutual has no obligation to pay any pending, previously-denied, and/or future No-Fault insurance claims submitted by Foremost, 135 Jericho, Medline, and Wellness Worx; and

(d) GRANT all other relief this Court deems just and appropriate.

## JURY TRIAL DEMAND

The plaintiffs demand a trial by jury on all claims.


KING, TILDEN, MCETTRICK & BRINK, P.C.,

*/s/ Shauna L. Sullivan*

_____
Nathan A. Tilden (NT0571)
ntilden@ktmpc.com
Shauna L. Sullivan (SS5624)
ssullivan@ktmpc.com
350 Granite St, Ste 2204
Braintree, MA 02184
(617) 770-2214

Attorneys for the Plaintiffs,
*LM General Insurance Company,*
*American States Insurance Company,*
*Liberty Mutual Fire Insurance Company,*
*LM Insurance Corporation, and*
*Wausau Underwriters Insurance Company*

Dated: May 16, 2025